OPINION OF THE COURT
Gabrielli, J.
The People appeal from an order of the Appellate Division which reversed defendant’s conviction of the crime of *338 conspiracy in the first degree and dismissed the indictment on the ground that, as a matter of law, the People had failed to prove defendant’s guilt beyond a reasonable doubt. The appeal presents three issues: (1) whether the People made out a prima facie case of conspiracy sufficient to justify use of an alleged coconspirator’s remarks during and in furtherance of the conspiracy against this defendant; (2) whether the prior acquittal of the alleged sole coconspirator precludes conviction of this defendant; and (3) whether Supreme Court was justified in denying defendant’s motion to dismiss on speedy trial grounds without a hearing.[1] For the reasons discussed below, we answer the first question in the affirmative and the second and third in the negative.
Defendant was convicted of conspiring with one Diane Alvarez to commit certain drug related class A felonies. The primary witness against defendant was Detective Robert Wainen, an undercover agent of the Drug Enforcement Administration. One of Wainen’s sources was Jason Stark, a confidential informant. Stark agreed to arrange a meeting between Wainen and defendant in Stark’s apartment at 12:30 p.m. on the afternoon of December 13, 1974 so that Wainen could purchase cocaine.
Wainen arrived at Stark’s apartment at about 12:15 p.m. on the appointed day. Defendant did not appear at 12:30, but at about 1:00 p.m. Stark received a phone call from a man who told him that he had been delayed and would not be able to get there until 2:30 p.m. Officer Wainen also listened to the phone conversation,[2] and, although he had not yet met defendant at that time, at trial he was able to identify the caller as *339 the defendant because of subsequent conversations which afforded him an opportunity to recognize and identify defendant’s voice over the telephone. Despite this call, defendant had still not arrived at Stark’s apartment by 3:00 p.m., at which time a second call was received. This time the officer did not listen to the caller, although he overheard Stark’s side of the conversation. As a result of that call, Stark and Wainen proceeded to the corner of 33rd Street and Third Avenue in Manhattan, where they were met by Diane Alvarez, who led Stark and Wainen to the apartment which both she and defendant were to list as their home when they were arrested. As they were traveling to the apartment, Alvarez informed them that the change in plans was necessary because "her boyfriend Ronnie had become paranoid.” She also assured them that "Ronnie” would be at the apartment. The defendant’s first name is Ronald.
Upon their arrival at the apartment, Alvarez led Wainen and Stark into the living room, where they engaged in general conversation for approximately five minutes. Then defendant entered the apartment, looked briefly at Wainen, and walked into another room in the rear of the apartment. Alvarez followed defendant into the rear room, and a few minutes later defendant and Alvarez both called out to Stark to join them there. Several minutes after he did so, Alvarez returned to Wainen, who had been waiting in the living room, and handed him a plastic bag containing 26.68 grams of cocaine. Alvarez then returned to the rear room while Wainen examined the package and its contents. Shortly thereafter Alvarez returned to the living room and asked Wainen for the money. He gave her some $2,200 and then told her that if they were to continue doing business the changes in time and place would have to cease. She assured him that there would be no such complications on the next occasion. He then asked if he could purchase a "heavier package” in the near future, and she replied that there would be no problem. Wainen and Stark then left the apartment.
On December 24, 1974, some 11 days after the transaction in the apartment, Wainen attempted to contact Alvarez by telephone to arrange another sale. Defendant answered the telephone, and after ascertaining Wainen’s identity, told him that Alvarez was out. The two then engaged in a somewhat ambiguous conversation, which was interpreted by Wainen at trial as containing numerous veiled references to the Decern *340 ber 13 sale as well as a discussion of a possible larger sale in the future. For example, Wainen indicated that he wanted to discuss "something different and uh, uh, you know, bigger” as well as the possibility of something "more steady”. Defendant replied that he could not agree to anything definite at that time, because "I still have to get hooked up with her * * * because um, that’s where I get it from.” Unbeknownst to defendant, Wainen taped the conversation and it was introduced at trial.
On December 27, 1974, Wainen again telephoned, this time reaching Alvarez. The two arranged to meet that afternoon for a discussion of future drug transactions. At that meeting, the two had a long conversation about the amount and price of drugs Alvarez could obtain for Wainen. She also explained that he should deal directly with her instead of defendant in the future, because the "connection” was hers and defendant normally handled only the street sales. During the next few days Alvarez and Wainen continued negotiations over the possible purchase of an eighth of a kilo of cocaine, but no sale resulted from those discussions. Shortly thereafter, Alvarez and defendant were arrested. They were indicted and tried separately. Defendant was charged only with conspiracy in the first degree and was convicted of that crime. Alvarez, who was charged with several counts, was acquitted of conspiracy but was convicted of criminal sale of a controlled substance in the second degree.[3]
On defendant’s appeal, the Appellate Division reversed the judgment of conviction on the law alone and dismissed the indictment. Correctly noting that any statements made by Alvarez and acts performed by her during and in furtherance of the alleged conspiracy could not be admitted into evidence against defendant unless the People first established a prima facie case of conspiracy without such evidence, the Appellate Division then found that the People in this case had failed, as a matter of law, to establish a prima facie case of conspiracy. Accordingly, the Appellate Division concluded that the People had failed to prove defendant’s guilt beyond a reasonable doubt. We disagree.
*341 Initially, we note that the principles of law applicable to this case are well settled. Although normally an admission made by one defendant is not binding upon and may not be used against another defendant, the rule is somewhat different with respect to conspiracy. Where two or more persons have entered into an illicit agreement to commit a crime, each of them to some extent may be deemed to speak as an agent for the others with respect to statements made in furtherance of and in the course of that conspiracy. Thus, once a prima facie case of conspiracy has been made out, such statements are admissible against each coconspirator (see People v Salko, 47 NY2d 230, 237-238). For similar reasons, "[o]nce an illicit agreement is shown, the overt act of any conspirator may be attributed to other conspirators to establish the offense of conspiracy” (People v McGee, 49 NY2d 48, 57; see Penal Law, § 105.20), although the mere fact that one is a coconspirator does not in and of itself support the imputation of criminal liability for the object crime (see People v McGee, supra, pp 57-58).
Applying these principles to the instant case, we conclude that the People did establish a prima facie case of conspiracy sufficient to justify the use of Alvarez’ statements against defendant and to premise defendant’s guilt of conspiracy upon the overt acts performed by Alvarez in furtherance of their illicit agreement. Defendant’s involvement in the plan to sell drugs to Officer Wainen was evidenced by his significant connections with the transaction: there was evidence indicating that from the very beginning, it was defendant whom Wainen was to meet on December 13, not Alvarez, as is shown by Wainen’s testimony that defendant called the apartment to postpone the first meeting. Similarly, once the informant and Officer Wainen arrived at the apartment, the transaction was delayed until defendant made his appearance. While the actual sale was conducted by Alvarez, the details of that transaction, as described above, lead inexorably to the conclusion that defendant was involved. Finally, the tape-recorded conversation between defendant and Officer Wainen on December 24, although possibly somewhat ambiguous if viewed alone, contains clear indicia of guilt when interpreted in context and in light of the prior meeting between Wainen and defendant, which was fully described by Wainen at trial. In short, although it might well be that absent the incriminatory statements and actions of Alvarez there would be insufficient *342 evidence to prove defendant’s guilt beyond a reasonable doubt, the introduction into evidence of those statements and acts requires only the establishment of a prima facie case. We find that the evidence as to the statements and actions of defendant alone sufficed to establish a prima facie case, and thus the statements made by Alvarez and the overt acts performed by her were properly admitted against defendant. Those, when added to the other evidence of guilt, sufficed to prove defendant’s guilt beyond a reasonable doubt. Accordingly, the Appellate Division erred in reversing defendant’s conviction and dismissing the indictment on this ground.
This does not end the matter, however, for defendant also contends that the acquittal of Alvarez served as a bar to the subsequent trial of defendant for conspiracy, pursuant to established rules of collateral estoppel or issue preclusion. Although the Appellate Division did not reach this issue, it was raised by defendant both before that court and by pretrial motion to dismiss. The issue is therefore preserved for our review and may be raised defensively on this appeal. Initially, defendant argues that the crime of conspiracy necessarily requires at least two conspirators since it is premised upon an agreement between at least two persons. In the instant case, the only alleged conspirators were Alvarez and defendant, and thus, according to defendant, if Alvarez is not a conspirator neither is he. Finally, according to defendant, since Alvarez has been acquitted of participation in this conspiracy, the People are estopped from contending at his subsequent trial that he and she entered into an illicit agreement. Thus, it is claimed that since the People are supposedly precluded from proving the existence of any illicit agreement between Alvarez and defendant, they must of necessity be precluded from prosecuting defendant as a conspirator.
Insofar as defendant’s argument is premised upon the belief that there must exist at least two criminally culpable persons for there to be a conspiracy, it must be rejected as ah attempt to return to the traditional "bilateral” theory of conspiracy, which is no longer the law in this State as a result of the Legislature’s decision to adopt a "unilateral” theory of liability for conspiracy (Penal Law, § 105.30; see People v Schwimmer, 47 NY2d 1004, aifg 66 AD2d 91). Under the unilateral theory of conspiracy as it exists in this State, a defendant may be convicted of conspiracy even though all other parties to the illicit agreement are not criminally liable *343 due to age, lack of intent, or some similar impediment (see Penal Law, § 105.30). Thus, the fact that Alvarez, as a result of her acquittal, must be deemed not to be criminally liable as a conspirator, does not alone bar prosecution of defendant even though he is the only other alleged conspirator. This does not completely dispose of defendant’s contentions, however, since regardless whether a unilateral or bilateral approach to conspiracy be involved, it is fundamental that no one can be convicted of conspiracy if there exists no illicit agreement. In the instant case, defendant contends that Alvarez’ acquittal on the conspiracy count, when viewed together with her conviction for sale of a controlled substance, mandates the conclusion that the acquittal for conspiracy was premised not on a lack of intent or any similar impediment, but rather on the absence of any illicit agreement between her and defendant. Defendant argues strenuously that since Alvarez was convicted of the sale charge stemming from her dealings with Wainen, the jury could not have concluded that she lacked intent or any other mental element necessary to show a conspiracy. And finally, in this connection, defendant contends that pursuant to traditional principles of collateral estoppel, the purported finding by the jury in the Alvarez prosecution that there was no agreement[4] precludes prosecution of this defendant for a conspiracy premised upon that same agreement.
It is important to note at the outset that this argument is premised entirely upon common law, nonconstitutional principles of collateral estoppel. Since defendant was not put in jeopardy by the prior prosecution of Alvarez, we need not concern ourselves with double jeopardy considerations. Similarly inapplicable are those aspects of collateral estoppel and res judicata which have been subsumed within the Federal constitutional prohibition against double jeopardy so as to preclude the prosecution of a defendant who has himself previously been acquitted of another crime based on the same *344 transaction, where the prior acquittal necessarily involved a rejection by the jury of some factual element necessary to the new prosecution (compare Ashe v Swenson, 397 US 436, with One Lot Emerald Cut Stones v United States, 409 US 232). Rather, defendant’s claim is premised solely upon the application of common-law principles of collateral estoppel or issue preclusion in a criminal case.
It is now well settled that the doctrine of collateral estoppel is applicable to criminal as well as civil matters, and exists independent of the prohibition against double jeopardy (see People ex rel. Dowdy v Smith, 48 NY2d 477, 482-484). As we have previously noted, "[collateral estoppel, as distinguished from the principle of double jeopardy, arises not so much from concern for the peace of mind of the defendant as from a long-recognized equitable reaction against allowing a party to relitigate issues which have already been decided against him” (People v Lo Cicero, 14 NY2d 374, 380). Nonetheless, it has long been recognized that neither the doctrine of collateral estoppel nor the principles of res judicata from which it has developed should be applied "to criminal prosecutions in quite the same way as that body of doctrine is applicable to civil cases” (People v Reisman, 29 NY2d 278, 285; Matter of McGrath v Gold, 36 NY2d 406, 411; see, also, Res Judicata— Criminal Cases, Ann., 9 ALR3d 203; Matter of Martinis v Supreme Ct. of State of N. Y., 15 NY2d 240, 249-251). Collateral estoppel has always been a flexible doctrine which is not to be applied blindly and mechanically (see Schwartz v Public Administrator of County of Bronx, 24 NY2d 65, 73). This is especially true when questions arise concerning the extent and propriety of its application to fields far removed from that body of law within which the doctrine evolved — civil litigation (see, generally, Matter of Venes v Community School Bd. of Dist. 26, 43 NY2d 520). Care must be taken lest the rigid application of collateral estoppel principles to other areas of the law runs afoul of countervailing policies which may at times outweigh the otherwise sound reasons for preventing repetitive litigation to the greatest extent possible (see Developments in the Law — Res Judicata, 65 Harv L Rev 818, 840).
It is for such reasons that the criminal law counterpart of the rule of mutuality of estoppel, which we have long since thrown aside as a "dead letter” in civil cases (B. R. DeWitt, Inc. v Hall, 19 NY2d 141, 147; see Liberty Mut. Ins. Co. v Colon & Co., 260 NY 305; Good Health Dairy Prods. Corp. v *345 Emery, 275 NY 14), has never been discarded by this court. Indeed, we have repeatedly declared that collateral estoppel will apply in a criminal case only if the parties are the same (Matter of McGrath v Gold, 36 NY2d 406, 411, supra) or are so closely related that they may be deemed as one for these purposes (e.g., People ex rel. Dowdy v Smith, 48 NY2d 477, 482, supra; see, also, Matter of Finn’s Liq. Shop v State Liq. Auth., 24 NY2d 647, 662; cf. People v Reisman, 29 NY2d 278, 285, supra; People v Lo Cicero, 14 NY2d 374, 380, supra). Although it is true that in civil litigation there has always been greater flexibility as to the identity of the party who seeks to utilize the estoppel than is deemed proper with respect to the identity of the party against whom the estoppel is to be employed, there exist sound policy grounds for not adopting similar rules in a criminal prosecution. For one thing, in the criminal law, in contrast to civil litigation, society has an overwhelming interest in ensuring not merely that the determination of guilt or innocence be made, but that it be made correctly. While the correct resolution of civil disputes is indeed an important goal of our legal system, it may fairly be said that society’s primary interest in the resolution of civil disputes is that they be settled in a peaceful, orderly, and impartial manner. Since this is so, it is appropriate that litigation-limiting devices such as the doctrine of collateral estoppel be liberally applied in civil litigation. In contradistinction, it is the correctness of the result which is of pre-eminent concern in a criminal prosecution, for the major function of a criminal proceeding is the conviction of the guilty and the acquittal of the innocent, not the swift resolution of some private dispute between the prosecutor and the accused. Hence, the civil doctrine of collateral estoppel, which accepts the occasional enthronement of erroneous findings of fact as a necessary cost of conserving the time and resources of the parties and the courts, is of less relevance in the criminal law.
Of considerable significance is the fact that in criminal law, unlike civil litigation, defendants are, to a great extent, protected from burdensome and repetitious prosecution by the constitutional and statutory prohibitions against double jeopardy. Thus, the doctrines of collateral estoppel and res judicata are somewhat less needed in the criminal law. Especially is this true in this State, for our law contains extraordinarily broad proscriptions against multiple prosecutions of the same *346 defendant for the same crime or for different crimes based on the same transaction (see CPL 40.20; People v Abbamonte, 43 NY2d 74).
There exist several other persuasive reasons not to apply principles of collateral estoppel so as to allow the acquittal of one defendant to ever serve as a bar to the prosecution of another. In most cases there will be significant disparities in the proof which is available against each of two defendants. For example, one defendant may make admissions which can be used against him at his trial, but which could not be introduced at the trial of a codefendant. To suggest that the People had a fair opportunity to litigate the issue of the confessing defendant’s guilt at the trial of the nonconfessing defendant would result in an absurdity. While this example is perhaps rather extreme, it is certainly not uncommon, and the vagaries of the complex rules of evidence applicable to criminal trials will in most cases result in the existence of evidence which may be used against only one of several persons accused of the same crimes. This is especially significant in light of the fact that the People must meet the high burden of proving guilt beyond a reasonable doubt in a criminal prosecution. Hence, the acquittal of one of two defendants means merely that the People were unable to prove his guilt beyond a reasonable doubt; it does not mean that the People will necessarily be unable to prove the guilt of the other defendant beyond a reasonable doubt. We see no reason to forbid an attempt to do so.
Additionally, it will normally be impossible to ascertain the exact import of a verdict of acquittal in a criminal trial. It may well be that the acquittal of one defendant is based on some factor which is not relevant to the guilt or innocence of the other defendant. For example, there exist several defenses and affirmative defenses which are personal to a particular defendant and would not affect the guilt or innocence of another person accused of the same crime. Moreover, there always exists the possibility that the jury in the first case will have exercised its so-called "mercy” function (see Dunn v United States, 284 US 390, 393) despite instructions to the contrary, especially in a case involving multiple crimes arising from the same transaction.
For all these reasons, we conclude that a defendant whose own interests were not put directly in issue at the prior trial may not utilize the doctrine of collateral estoppel as a bar to *347 his own prosecution. This is so because the doctrine of collateral estoppel may be used only against a party who has had a full and fair opportunity to previously litigate that same issue, and the People simply do not have a full and fair opportunity to contest the guilt of one defendant at the trial of another defendant.
As a result of our decision that the Appellate Division erred in concluding that the People had failed, as a matter of law, to make out a prima facie case of conspiracy against the defendant and our determination that the acquittal of Alvarez does not preclude defendant’s conviction, there must be a reversal. Because the Appellate Division order of reversal was on the law alone, that court has not yet had an opportunity to exercise its power to review questions of fact and discretion. Accordingly, the case must be remitted to that court for such review. Should the Appellate Division conclude on remittal that there exists some reason to set aside defendant’s conviction, it must then take whatever corrective action is appropriate (see CPL 470.20).
There exists, however, one further matter which warrants our consideration and which would in any case serve to prevent the Appellate Division from immediately affirming defendant’s conviction on remittal even in the absence of any other reason for not doing so. In March, 1977, shortly before his trial commenced, defendant moved to dismiss on the ground that he had been deprived of a speedy trial. The factual allegations supporting that motion were provided by defense counsel’s affidavit. According to defense counsel, shortly after defendant was indicted in July of 1975, defendant sought and obtained discovery. By July of 1976, however, defendant was fully prepared for trial and actually requested that he be speedily tried. Allegedly, the People rejected defendant’s requests for a trial and declared on several occasions that they were not yet ready for trial either because the Assistant District Attorney in charge of the case was otherwise occupied or because counsel for Alvarez was indisposed and the People wished to try Alvarez first. Defense counsel further alleged that more than six months went by as a result of such delays by the People during which time the People were not ready for trial, and that defendant was accordingly entitled to a dismissal pursuant to CPL 30.30. Accompanying the motion papers, however, was a copy of the calendar notations made by the court officer concerning all pretrial *348 appearances in the case. These notations are made on a preprinted form which provides space for the following information about every appearance: the Part of court in which the appearance is made and the date of the appearance; the name of the Presiding Justice; the Part of court and the date to which the matter is adjourned; the reason for the adjournment; the name of the court reporter; a space for any remarks; and a place for a check mark to indicate whether the adjournment is "excluded”. This is apparently intended as an indication whether the delay due to the adjournment is to be excluded from the six-month speedy trial period. The notations concerning defendant’s appearances were minimal at best. On many occasions no reason was given for an adjournment and seldom were there any explanatory remarks. As to the notations concerning the excludability of such adjournments, 20 adjournments were marked "excludable”, 4 were not marked, and none were marked "not-excludable”. In opposition to defendant’s motion, the People did not provide any affidavits contradicting defendant’s allegations, and instead merely submitted an unsworn memorandum indicating that they took issue with defendant’s claims and contending that the fact that the adjournment periods were marked "excluded” on the calendar notations was dispositive of the matter. The motion to dismiss was denied on the basis of these notations and without any inquiry into the actual reasons for the various adjournments. This was error.
It has long been the law in this State that every accused is entitled to a speedy trial. This was a settled principle of State law long before the Supreme Court concluded in Klopfer v North Carolina (386 US 213) that the speedy trial guarantee provided by the Sixth Amendment is binding upon the States (see People v Prosser, 309 NY 353). That policy is now embodied in both the broad declaration of CPL 30.20 (subd 1) that every "defendant is entitled to a speedy trial” (see People v Moore, 47 NY2d 872; People v Dean, 45 NY2d 651, 659; People v Johnson, 38 NY2d 271; People v Taranovich, 37 NY2d 442) and in the specific time periods prescribed by CPL 30.30 within which the People must be ready for trial. It is the latter section which is applicable here. CPL 30.30 provides that unless the prosecution is ready for trial within six months after the commencement of a criminal prosecution charging a felony, the indictment must be dismissed. In computing that six-month period, however, certain time periods *349 are to be excluded. This is so because in certain cases there may be good reason for the prosecution’s not being prepared for trial within six months after the commencement of the action. At the same time, however, it is glaringly apparent that the main thrust of the CPL 30.30 is to require the prosecution to be prepared within six months in all but the unusual case. Because of this, once the defendant has shown the existence of a delay greater than six months, the burden of proving that certain periods within that time should be excluded falls upon the People (compare People v Gruden, 42 NY2d 214, with People v Dean, 45 NY2d 651, supra).
In this case the court erroneously concluded that that burden had been met by the calendar notations enscribed by the court officer after each appearance, presumably at the direction of the Presiding Justice. Such notations, however, do not comprise a binding determination as to whether in fact the time span covered by a particular adjournment is to be excluded from the six-month period within which the People must declare their readiness for trial. That determination is one which must be made following an adversarial proceeding at which the defendant has an adequate opportunity to contend that the time is not excludable. It may not be made by the court acting sua sponte and in the absence of the parties. Normally, moreover, it is a determination which is to be made when the defendant moves to dismiss on speedy trial grounds, and not at the time the adjournment is granted. This is so because there is no necessary connection between the validity of a particular ground for an adjournment and the question whether such a period is to be excluded in computing the six-month period pursuant to CPL 30.30. At any rate, the calendar notations alone do not suffice to prove that the periods marked "excluded” do in fact come within the ambit of the statutory exclusions. Hence, since the defendant alleged the existence of a delay greater than six months and the People did not provide conclusive proof of sufficient excludable periods, the court erred in denying the motion to dismiss without a full hearing. Accordingly, should the Appellate Division on remittal conclude that there exists no other reason for setting aside defendant’s conviction, it nonetheless may not then immediately affirm defendant’s conviction, but must withhold final determination of the appeal pending a remittal to Supreme Court for a hearing on defendant’s speedy trial motion.
Accordingly, the order appealed from should be reversed *350 and the case remitted to the Appellate Division for further proceedings in accord with this opinion.
Chief Judge Cooke and Judges Jasen, Jones, Wachtler, Fuchsberg and Meyer concur.
Order reversed and case remitted to the Appellate Division, First Department, for further proceedings in accordance with the opinion herein.

. Defendant also contends that the trial court erred in denying his motion to strike all testimony by an agent of the Drug Enforcement Administration on the ground that the People had failed to give timely notice as required by CPL 710.30. Such notice, however, is only required with respect to a witness who has previously identified the defendant in "earlier police-arranged confrontations * * * for the purpose of establishing the identity of the criminal actor” (People v Gissendanner, 48 NY2d 543, 552). Here, our examination of the record reveals no proof of a confrontation of that nature, despite a full opportunity to question the witness about the details of any prior identification of defendant once the possibility was raised. Although there was some mention of a meeting between the witness and the defendant at the Drug Enforcement Administration office following defendant’s arrest, there is no testimony indicating that this was an arranged confrontation for the purposes of establishing identity. Nor was there any need to provide prior notice of intent to use at trial the pedigree information defendant provided to the police at the time of his arrest.

. Stark did not testify at defendant’s trial.

. Alvarez’ conviction was subsequently reversed by the Appellate Division on an appeal raising issues unrelated to those involved on defendant’s appeal (see People v Alvarez, 65 AD2d 146). We note that unlike defendant, who did not testify at his trial, Alvarez testified on her own behalf at her trial, and also raised the affirmative defenses of duress and entrapment. Alvarez did not testify at defendant’s trial.

. In light of our conclusion that collateral estoppel in a criminal case does not operate to the benefit of a defendant whose interests were not directly involved in the prior prosecution, we need not decide whether the verdicts in the Alvarez prosecution necessarily encompassed a finding that there was no agreement between defendant and Alvarez. We also refrain from commenting upon the proper result when two defendants are tried together for participation in the same conspiracy and one is acquitted while the other is convicted, other than to note that such a case would not involve principles of collateral estoppel or res judicata (but see People v Bauer, 32 AD2d 463, 467, affd without opn 26 NY2d 915).