OPINION OF THE COURT
Alfred Donati, Jr., J.
The defendant in this case stands accused of violating Penal Law § 215.50 (3) (criminal contempt in the second degree).
*355 Defendant now moves this court for an order dismissing the information (a) on the ground that the People are collaterally estopped from litigating the issue of defendant’s intent in the instant case, and (b) in the furtherance of justice pursuant to CPL 170.40.
For the reasons set forth hereinafter, defendant’s motion to dismiss is denied in all respects.
STATEMENT OF FACTS
The following findings of fact are made, for the purpose of this motion only, based upon the affidavits submitted to this court:
On February 4, 1987, the defendant, Sam Kurshan, was arrested and charged with a violation of Penal Law § 240.30 (aggravated harassment). The charge stemmed from a dispute in which the defendant and his upstairs neighbor (the complainant) became embroiled in a continuing disagreement over the noise level emanating from the complainant’s apartment. The defendant contended that the playing of musical instruments at what he termed inappropriate hours of the evening disturbed him. In that regard, the defendant sent three letters to the complainant and her husband. The letters were sent on December 2, 1986, December 10, 1986, and February 2, 1987. These letters were alleged by the complainant to have threatened her and her husband with bodily harm.
At the defendant’s arraignment on the charge of aggravated harassment, a temporary order of protection was issued pursuant to CPL 530.13, and this protective order was extended several times. The order essentially precluded defendant from harassing, intimidating, threatening or otherwise interfering with the complainant.
During the pendency of the protective order the defendant is alleged to have yelled through the floor of the complainant’s apartment the following threat: "You better watch your ass— you’re going to be spending some time in a hospital — remember Marla Hanson”. As a result of this allegation by complainant, on May 6, 1987 defendant was rearrested and charged with the Penal Law § 215.50 (3) violation. It is this charge that the defendant now seeks to dismiss.
While the criminal contempt charge was pending, defendant was tried on the underlying aggravated harassment charge. During the course of that trial, the prosecutor was permitted, *356 over objection, to introduce into evidence the entirety of the alleged verbal threat made to the complainant. The record also reveals that several references were made to that alleged threat by the prosecutor in both his opening and closing statements, as well as in his examination of witnesses. The trial court ruled that the alleged verbal threat could constitute evidence on the intent issue in the aggravated harassment case and was thus admissible for that limited purpose. As the Trial Judge permitted the use of that evidence only on the issue of defendant’s intent, the trial court instructed the jury on the limits of the use of such evidence. The defendant conceded sending the letters but maintained that they were not threatening and that he did not have the intent to commit the crime there charged. The jury acquitted the defendant of the charge of aggravated harassment.
The People now seek trial of the defendant on the criminal contempt charge stemming from the alleged violation of the protective order.
CONCLUSIONS OF LAW
The doctrine of collateral estoppel, although having its genesis in civil litigation, is recognized as having application to criminal proceedings as well. (People v Goodman, 69 NY2d 32 [1986]; see, People v Sailor, 65 NY2d 224, 228 [1985]; People v Plevy, 52 NY2d 58, 64-65 [1980]; People v Berkowitz, 50 NY2d 333, 344 [1980]; Matter of McGrath v Gold, 36 NY2d 406, 411 [1975]; United States v Oppenheimer, 242 US 85 [1916].) The doctrine, however, is not applied in a criminal setting in a fashion identical to that in a civil forum because the overriding concern in a criminal proceeding is to reach a correct result, as distinguished from the goal of economy of time and resources which is the objective in its civil application. (People v Plevy, supra, at 64-65.)
The doctrine acts to bar, in a new proceeding, relitigation of matters already decided with finality in a prior proceeding. Such a "final judgment” precludes the same parties from relitigating such a matter in a future suit. (Matter of McGrath v Gold, supra, at 411.) Although the doctrine traditionally precluded the relitigation of matters of "ultimate fact” involved in the prior proceeding, the doctrine has been utilized to bar the relitigation of evidentiary issues as well. (People v Acevedo, 69 NY2d 478 [1987]; see, Ashe v Swenson, 397 US 436 [1970].)
*357 The application of the doctrine requires the satisfaction of a three-prong standard in order to preclude relitigation of either an ultimate or evidentiary issue. First, there must be an identity of parties (People v Berkowitz, supra, at 345; People v Reisman, 29 NY2d 278, 285 [1971]; People v Lo Cicero, 14 NY2d 374, 380 [1964]). Next, there must also be an identity of the issue involved (see, People ex rel. Dowdy v Smith, 48 NY2d 477, 482-483 [1979]; People v Reisman, 29 NY2d 278, 285, supra) and third, a final judgment on the merits must have resolved the particular issue in question, with the parties having been afforded a full and fair opportunity to litigate such issue. (See, People v Sailor, supra, at 229; People v Berkowitz, supra, at 347; Schwartz v Public Adm’r, 24 NY2d 65 [1969].)
The doctrine enjoys constitutional status in that it is embodied in the Fifth Amendment guarantee against double jeopardy. The doctrine guides the several States by virtue of the Fifth Amendment’s incorporation into the Due Process Clause of the Fourteenth Amendment to the US Constitution. (Ashe v Swenson, supra; Benton v Maryland, 395 US 784 [1969].) Such incorporation guarantees "that the State with all its resources and power [shall] not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity”. (Green v United States, 355 US 184, 187 [1957].) Indeed, New York statutory law presents a "generous version” of the double jeopardy defense. (See, Bellacosa, Practice Commentary, McKinney’s Cons Laws of NY, Book 11 A, CPL 40.10, at 243-244.)
Applicability of the doctrine requires that the court determine what was actually resolved in the first trial and the relationship between that resolution and the issue sought to be litigated in the second trial. (United States v Mespoulede, 597 F2d 329, 333 [1979]; United States v Kramer, 289 F2d 909, 913 [1961].) Initially, the court must assume that the jury reached a rational verdict. (See, Ashe v Swenson, supra, at 444.) The onus is then upon the defendant first to identify the issue on which he seeks to foreclose evidence and then demonstrate that the very same issue was resolved in his favor by verdict at the first trial. (People v Goodman, supra, at 40; United States v Mespoulede, supra, at 333.)
*358 DISCUSSION
The issue presented here is one of apparent first impression: whether the People are barred by the doctrine of collateral estoppel from litigating a crucial evidentiary issue in a trial for the violation of a protective order where, in a prior trial, the defendant was acquitted of the underlying charge from which the protective order arose, and the same evidence, of the act now alleged to constitute the violation of the protective order, had been submitted to the jury on the issue of intent in the prior trial.
Defendant’s argument is that under the circumstances of the People’s use at the first trial of the alleged verbal threat, the acquittal of defendant at the first trial necessarily determined the element of intent which would be in issue at the second trial, thus requiring acquittal on the second charge. Otherwise stated, the defendant argues that because the People apparently failed to provide beyond a reasonable doubt that the defendant intended to harass by letter where the evidence of his intent was the alleged verbal threat now in issue, he could not have intended to harass the complainant at a later time by that same, alleged, verbal threat.
The flaws in this argument are clear. Firstly, the intent requirement for conviction of aggravated harassment is separate and distinct from that required for conviction of criminal contempt in the second degree. While the former requires an intent to engage in harassing, annoying, or alarming behavior, the latter crime requires proof of intent to disobey or resist a lawful mandate of the court, albeit that mandate may include refraining from similar conduct. (Penal Law §§ 240.30, 215.50 [3]-)
Thus, although the jury acquitting the defendant of the aggravated harassment charge could have found that defendant lacked the intent requisite for conviction on that charge, a subsequent jury making new findings of fact at a new trial on the charge of criminal contempt could still find that defendant, at the later point in time at which the alleged verbal threat was made, harbored the intent requisite to establish a violation of the terms of the protective order. Thus, contrary to defendant’s argument, there was no overlapping of the element of intent' involved in each of the two cases.
Accepting the defendant’s argument would require acceptance of the proposition that the alleged later-in-time verbal threat was necessarily an integral part of the intent involved *359 in the earlier allegation of harassment. At the first trial the defendant was acquitted of harassment by letter. The alleged act of verbal abuse submitted to the jury on the intent issue was considerably separate in time from the writing of the December and February letters. Thus, even though the defendant may have been found not to have had the intent to harass by letter, it is entirely possible that a fact finder may reach the conclusion that the defendant intended at a later point in time to violate the order prohibiting harassment of the complainant. Moreover, such determination would not conflict with the possible determination made by the earlier panel that defendant did not have the intent requisite to convict on the aggravated harassment charge.
Further, and as the defendant concedes, the jury in the aggravated harassment case was instructed that the evidence of the verbal threat was only to be used by them to determine the intent or mental state of the defendant with respect to the December and February letters. The jury was specifically instructed that such evidence was not admitted on any issue of defendant’s guilt with respect to a different crime than that before the jury hearing the aggravated harassment charge. Thus, the jury’s verdict merely acquitted the defendant of a prior alleged harassment, necessarily and properly leaving to another finder of fact the issue of defendant’s intent to later violate the protective order.
Moreover, the jury’s verdict of not guilty of aggravated harassment surely was not reached by the mere and exclusive use of the evidence of a verbal threat. The jury also had before it the letters sent to the complainant and must be presumed to have considered such letters in its deliberations on the issue of whether the letters established the remaining elements of the aggravated harassment charge. The jury thus may not even have reached a determination on the element of intent.
It follows from the foregoing that the jury’s verdict of not guilty on the harassment charge does not inexorably lead to the conclusion that the verdict determined that the defendant did not, at a later time, intend to be verbally abusive in violation of the protective order.
Accordingly, upon application of the three-prong standard necessary to be satisfied to establish collateral estoppel in the instant case, it becomes apparent that only the parties are identical — that the issue of intent involved in the instant case *360 is not the same issue as was involved in the prior proceeding. Thus there was not necessarily, in the prior proceeding, a full hearing and final judgment on the merits on the issue of intent in the instant case.
CONCLUSION
The People are not estopped from pursuing prosecution of the criminal contempt charge. The evidentiary issue of verbal abuse litigated at the defendant’s harassment trial is not the same issue sought to be litigated at his impending criminal contempt trial. The alleged verbal abuse of the complainant was not necessarily an integral part of the harassment by letter determination nor a necessary issue in the defendant’s acquittal. The charges now leveled against the defendant, although apparently arising from one dispute, are distinct from the prior criminal proceeding. This branch of the defendant’s motion is therefore denied.
The defendant also moves for a dismissal in the furtherance of justice pursuant to CPL 170.40. After a careful examination of defendant’s arguments, this court finds a lack of any compelling factor meriting dismissal.
In this regard, it may be noted that defendant’s relief from his alleged problems with the complainant does not lie in a dismissal of the charges against him through the vehicle of the instant motion. Defendant has maintained in the course of both proceedings against him that his statements, which the People characterize as threats and harassment, have only been advisements to complainant that defendant will pursue civil action(s) against her. That vehicle, indeed, is defendant’s recourse. Although the civil process is ofttimes tedious and expensive it is nonetheless the only alternative defendant has to other types of actions which could result, as here, in criminal charges. This branch of the defendant’s motion is therefore denied.