OPINION OF THE COURT
Lee Cross, J.
Defendant moves for dismissal of the accusatory instrument pursuant to CPL 30.30. That motion is denied. A major issue *556 raised in this case is whether speedy trial time should be charged as to all counts in an accusatory instrument when only some of the counts in that instrument have been converted to an information.
Defendant was arraigned on January 7, 1991 on charges of leaving the scene of an incident (Vehicle and Traffic Law § 600 [1] [a]), assault in the third degree (Penal Law § 120.00 [1]), resisting arrest (Penal Law § 205.30), criminal possession of a weapon in the fourth degree (Penal Law § 265.01 [2]), operating a motor vehicle while under the influence of alcohol with more than .10% blood alcohol level (Vehicle and Traffic Law § 1192 [2]), and operating a motor vehicle while under the influence of alcohol" (Vehicle and Traffic Law § 1192 [3]).
At arraignment, the charges of criminal possession of a weapon in the fourth degree and operating a motor vehicle while under the influence of alcohol in violation of subdivision (2) of Vehicle and Traffic Law § 1192 were dismissed by the court because the charges were not made out in the factual part of the accusatory instrument. (CPL 100.15 [3]; 100.40 [4].) The case was adjourned until February 13, 1991. The People concede that this 37-day adjournment period is chargeable to them.[1]
On February 13, 1991, the People announced "ready” on the charges of resisting arrest (Penal Law § 205.30) and operating a motor vehicle while under the influence of alcohol (Vehicle and Traffic Law § 1192 [3]), while conceding their continued unreadiness on the counts of assault in the third degree (Penal Law § 120.00 [1]) and leaving the scene (Vehicle and Traffic Law § 600 [1] [a]). No corroborating affidavit was required to convert the "ready” charges into an information as the accusatory instrument contained no hearsay as to those charges even at arraignment. Thus, the same accusatory instrument contained two charges which constituted an information and two unconverted charges which remained a complaint. A motion schedule was set by the court as to the counts which were an information, with a return date of March 13. The defendant contends that the People cannot announce "ready” on such a hybrid accusatory instrument. He argues that the People must either dismiss the counts which they are not yet "ready” to try or have the time charged *557 against them as to all counts until all counts have been converted. The People will not be charged with this adjournment as to the converted counts for the reasons stated below.
The concept of "partial conversion”, and the effect of the decision in People v Minor (144 Misc 2d 846 [App Term, 2d and 11th Jud Dists 1989]) have divided the Criminal Court bench and resulted in vastly different procedures being carried out in neighboring courtrooms. To begin with, the language in Minor that "the People’s failure to timely proceed on one count of an accusatory instrument does not necessarily adhere to the remaining counts upon which the People could be ready for trial”, is, as defense counsel are wont to point out, clearly dictum, since the discussion on that point is not necessary to the decision made by the court. (Supra, at 848.) But, the observation made by the court and the authority cited for it are compelling. CPL 170.30 (1) (e) allows a court to dismiss an accusatory instrument "or any count thereof’ upon the ground that the defendant has been denied the right to a speedy trial. CPL 100.40 (1) provides that an information "or a count thereof’ is sufficient when it is sufficient as a complaint and when sworn nonhearsay allegations support every element of the offense charged and the defendant’s commission thereof. Obviously, the drafters of this legislative framework contemplated that different counts might be corroborated at different times and that different speedy trial considerations could apply to different counts.[2]
Despite the clear support in the law for partial conversion of a complaint to an information, this concept is misunderstood because it is often confused with "readiness” for trial. Typically the People file corroborating affidavits and announce "ready” to stop the 30.30 clock.[3] But what does "ready” really *558 mean in an AP Part or at arraignment? What is being communicated by the filing of corroborating affidavits is that the complaint has been converted into an information.* **[4] The next step after conversion is motion practice. Adjournments for motions are not charged to the People for speedy trial purposes. (CPL 30.30 [4] [a], [b].) There is no requirement in the law that the People must be ready to try a case before the defendant is required to decide whether to file motions. When a complaint is converted, the ball is then in the defendant’s court, irrespective of whether the People are ready for trial. Does the defendant want to file motions or waive them? Only after motions are either waived or ruled on by the court does the ball then go back to the People and the question of when the case can actually be tried become pertinent. In other words, there is really no room at conversion for demanding an answer to the question of whether the People are "ready” for trial. If the defendant wants to file motions, then the adjournments necessary for him to do so and for the People’s response are excluded for speedy trial purposes. (CPL 30.30 [4] [a], [b].) Only after motion practice is complete must the People either be ready to try the case or have speedy trial time charged to them.[5]
Putting it in concrete terms, suppose the People file a corroborating affidavit and announce "ready” on the day that the complainant leaves on a trip for Europe. Can the defendant both demand the right to file motions and charge the *559 time to the People? The answer is clearly "No”. (CPL 30.30 [4] [a], [b].) Suppose the People file a corroborating affidavit and announce that the complaint is converted into an information. Can the defendant demand that the People announce "ready” for trial before he is obligated to decide whether he wants to file motions? On what grounds? Can the defendant refuse to let the court know whether he wants to file motions, demanding that the People must prove that they are ready for trial before he has to decide if he wants to engage in motion practice? It seems clear that the answer to these questions is also "No”. What would be the purpose in forcing the People to bring in all of their witnesses, just to get the defendant to declare that he wants to file motions.
Understanding the concept of conversion of a complaint into an information as something separate from the concept of readiness for trial helps to elucidate the issues raised in the idea of "partial readiness” or what is really "partial conversion”. Defense counsel here and in many other cases argue against "partial readiness” saying that the People cannot be ready to try a case which includes both converted and unconverted counts since a defendant has a right to go to trial only on counts which have been converted into an information. Even if that is true, it is beside the point. He is not being tried on the partially converted accusatory instrument. He is being asked whether or not he wants to file motions on those counts which are converted. If he wants to file motions as to the converted counts, the adjournment is not charged to the People as to the converted counts (although it will be charged on the unconverted counts).[8] If he wants to waive motions and have an immediate trial, the People will have to decide at that point whether to dismiss the unconverted counts, sever out only the converted counts for trial, or ask for an adjournment (and thus be charged with the time) on the converted counts so as to have a singe trial of all counts when all counts are ready for trial.[6]
[7]
*560 There is also a very practical reason why the court system should accept the concept of partial conversion of complaints. If an appellate court rules that partial conversion is not acceptable, District Attorneys may well adopt the practice routinely followed in the "Corporation Counsel” Part where building and fire summonses are heard. In that Part, each accusatory instrument typically contains only one count. If one incident involves five different charges, five different complaints are filed with five different docket numbers. Endorsements by the court must be made in each file, and the paperwork is multiplied fivefold. A similar situation is sometimes seen in the AP Parts with traffic infractions. Different accusatory instruments bearing different docket numbers are used to charge each separate traffic infraction. There is no question that if one of several separately charged complaints were converted while the others were not, the others would not have to be dismissed before motions were required on the one which was converted. But the proliferation of complaints and docket numbers is certainly not something which the courts should encourage the District Attorneys to resort to, as it would result in chaos if the People charged each count or even each group of counts involving each complainant in separate dockets.
Since the People partially converted the accusatory instrument, the adjournment from February 13 to March 13 for motion practice is excluded as to those counts which were an information by February 13.
On March 13, 1991, motion practice was complete. The court ordered a Mapp-Dunaway hearing as to a blood sample taken from the defendant and a Dunaway hearing as to a statement he made. A Huntley hearing was also ordered limited to whether the defendant’s statement was coerced, since the People said they would not use the statement on their direct case. Various items of discovery were also ordered, most of which went to the issue of whether the defendant’s statement was coerced. The court dismissed the counts of leaving the scene of an incident (Vehicle and Traffic Law § 600 [1] [a]) and assault in the third degree (Penal Law § 120.00 [1]) without prejudice, with leave to the People to refile the *561 charges under a new docket number if they did so within 90 days of the defendant’s arraignment. (See, n 7, supra.) The court sent the case to Jury 1 for April 16.[8] While the defendant contends that this adjournment should be charged to the People since their answers to his motions were not "satisfactory” and since they did not immediately produce in court all the discovery he requested, the time will not be charged as the adjournment was done for the court’s convenience and because the adjournment was necessary for the defendant to obtain discovery which he had requested.8 [9] (CPL 30.30 [4] [a]; People v Anderson, 66 NY2d 529 [1985]; People v Caussade, 162 AD2d 4 [2d Dept 1990].)
On April 16, the Assistant District Attorney reported on the progress the People were making in complying with the discovery ordered. The case was sent back to AP2, ultimately for hearings, with an adjourned date of May 7.[10] This adjournment is excludable as it was necessary for the court’s convenience and was a reasonable adjournment for the People to provide discovery.
On May 7 the case was, in the words of defense counsel, "on for continued discovery”. The discovery which was available was provided. As to certain items which the People thought did not exist, the People were directed to check so as to be able to make a firm representation upon which the defense could rely. Defense counsel wanted an adjournment until June 20, but the court adjourned it until June 4. This adjournment is excludable for discovery purposes.
On June 4, the defendant failed to appear in court and a bench warrant for his arrest was issued but its execution was *562 stayed. Since it was unclear as to whether he would again appear, the People were told to put their police officers on "alert”, not "bring in” status for the next date which was June 25. The defendant contends that this adjournment should be charged to the People as they did not exercise due diligence to produce him in court. This contention is absurd as the People could not do any more than they did, since the execution of the bench warrant was stayed at the request of defense counsel. If counsel had really wanted the People forcibly to produce his client in court, he should not have requested a stay of the bench warrant. It is clear that the period of time during which a bench warrant is stayed is excludable. (CPL 30.30 [4] [b], [c]; People v Toro, 151 AD2d 142 [1st Dept 1989], lv dismissed 75 NY2d 818; People v Patterson, 165 AD2d 779 [1st Dept 1990]; People v Espinosa, 170 AD2d 309 [1st Dept 1991]; see, discussion in People v Manzione, NYLJ, May 7, 1991, at 30, col 5 [Cross, J.].)
On June 25, the defendant appeared, but the People were unable to produce the police officer so the case was adjourned to July 9. This adjournment is charged to the People (14 days).
On July 9, the defendant again failed to appear in court, and again a bench warrant was stayed for him. This adjournment to August 6 is entirely excludable.[11] (See discussion, supra, on stayed bench warrants.)
On August 6, the suppression hearing proceeded with the presentation of the People’s case. Defense counsel was not then ready to go forward with his case as he had not yet received the hospital records which he wanted to adduce on the question of coercion. The court denied the defendant’s Mapp-Dunaway motion finding an abundance of probable cause, and reserved decision as to the Huntley motion. The case was adjourned to September 3 for the defendant to present his case. On September 3, the defendant presented the hospital records, which the People stipulated to, and the court denied the defendant’s Huntley motion, finding no evidence of coercion. As soon as the court ruled on the defense motions, the instant speedy trial motion was served and filed. All adjournments since then have been for the determination of the speedy trial motion and are thus excludable.
*563 In sum, 51 days of time are chargeable to the People, 37 days from the defendant’s arraignment on January 7 until February 13 and 14 days from June 25 until July 9. Since this is considerably less than the 90 days allotted to the People, the defendant’s motion to dismiss for want of a speedy trial is denied.

. This time will, therefore, be charged to the People. Absent this concession, however, it is an interesting question as to whether the People could have avoided the charging of this time to them. (See, n 5, infra.)

. CPL 30.30 (1) speaks of a criminal action as a whole. Defense counsel argue from this that all of the charges in an accusatory instrument must be dismissed if speedy trial time has expired as to any of them. But, the Appellate Division, Second Department, has not interpreted CPL 30.30 to require that all charges in an accusatory instrument be treated identically with respect to speedy trial time. In People v Papa (96 AD2d 601 [2d Dept 1983]), the court dismissed some of the counts in an indictment on the ground that prosecution of those counts had commenced when the defendant was arraigned on a felony complaint which charged that conduct, while holding that speedy trial time had not necessarily passed as to other counts which were first charged against the defendant in the indictment.

. Some defense counsel argue that when the People file corroborating affidavits and announce "ready”, they must have at their immediate disposal all of their witnesses and all of their evidence. To be sure, if the *558 corroborating affidavit is filed exactly 90 days after arraignment, the People had better have their witnesses and evidence instantly available, because the defendant might waive motions and demand an immediate trial, which the People would have to oblige him with at pain of losing the case on 30.30 grounds. Since much of the case law comes from situations where arguably 90 or so days have passed before corroboration, the concept of conversion of a complaint into an information and "readiness” for trial have become confused, because in that situation the concepts merge.

. By definition, the People cannot be ready for trial prior to conversion, unless the defendant waives prosecution by information. After conversion, the People may or may not be ready for trial, depending on events other than the need to file corroborating affidavits. Unfortunately, the People tend to file corroborating affidavits and announce ready as if readiness and conversion were one and the same concept.

. The People could have avoided the charging of speedy trial time in this case as to the converted counts from the date of arraignment, had they asked at that time that the defense either waive motions or ask for a motions schedule. But the People have conceded that this time should be charged against them as to those counts. No transcript of the arraignment has been provided so this court does not know what was said. Therefore the time in this case will be charged.

. See, n 2, supra.

. In AP2 in Brooklyn, this theoretical framework has been followed. If the People partially convert an instrument, a motions schedule is established. When the case is ready to be sent out from the AP Part to a Jury Part, unconverted counts are dismissed since unconverted charges are not supposed to be sent to a Jury Part and it is physically impossible to split up the court file. Leave is given to the People to refile the charges under a separate docket number if the People can do so within 30.30 time. In fact, the People have never done so. If additional counts are converted in the AP *560 Part after motions have been filed on the already converted counts, defense counsel is given leave to file additional motions addressed to the newly converted counts. Defense counsel have never done so, as their original motions are, not surprisingly, generally broad enough to cover all aspects of the case.

. The agreement among the Judges of the Criminal Court in Brooklyn is that all cases leaving the AP Parts will be sent to Jury 1.

. It is interesting to note that as of August 6, the date the hearing was held, defense counsel had not yet obtained the hospital records of the defendant’s treatment immediately after his arrest. Thus, he insists that the People should be charged with speedy trial time for not immediately turning over the discovery he had requested so that he could use it at the hearing on the issue of the defendant’s condition after his arrest when he made the statement. But, on August 6, he still had not obtained evidence as basic to that issue as the records of the hospital treatment the defendant received immediately after his arrest. This makes it clear that the defense is not really interested in a speedy trial, but is, instead, trying to use CPL 30.30 as an obstacle course through which the People must maneuver at peril of losing the case.

. The agreement among the Judges in Criminal Court in Brooklyn is that cases which originate in AP2 which need hearings on motions will be adjourned back to AP2 after Jury 1 and the hearings conducted in AP2.

. The Judge marked the papers that one week was to be charged to the People since the People were also not ready to proceed. This marking is not binding on this court in the decision of this motion. (People v Berkowitz, 50 NY2d 333 [1980].)