Titone and Bellacosa, JJ.
(concurring in part and dissenting in part). We vote to reverse and dismiss the indictments because the People’s readiness responsibilities under CPL 30.30 have not been satisfied. The majority’s rationale with *104 respect to this issue is puzzling and misdirected. Although the trial court’s April 10, 1985 commitment order expired on October 11, 1985, the People did nothing to bring defendant to trial until more than a year later, when they finally declared their readiness. The majority nonetheless finds that the timing requirements of CPL 30.30 were not violated, because, in its view, the combined effect of the trial court’s "unaltered” finding of incompetency, coupled with a "parallel” finding of incompetency in a different criminal action in New York County, somehow excused the People’s protracted unreadiness in this criminal action. The principles that have long governed analysis under CPL 30.30 do not tolerate such laxity.
I.
Defendant was initially arrested in Queens County on December 8, 1983 and held on a felony complaint. After a series of routine pretrial proceedings, defense counsel moved for a competency hearing, with the result that defendant was found to be unfit to proceed and, on April 10, 1985, was committed to the custody of the Department of Mental Hygiene (DMH) for a period of six months. This commitment order was never extended. Nevertheless, the People did nothing further to prosecute the case until September 24, 1986, when they learned from the New York County District Attorney’s office that some six months earlier DMH had determined that defendant was fit to proceed and had released him to the custody of New York City Department of Correction. According to the stipulated facts at the CPL 30.30 hearing, the People’s inaction was the result of their "custom and policy” of relying on DMH to monitor expiring retention orders and to give them notice whenever a defendant under commitment on a retention order was about to be released. Once the Queens prosecutor learned of defendant’s release to the Department of Correction, the Queens case was restored to the trial calendar and, on October 16, 1986, the People formally declared their readiness for trial. The Supreme Court, Queens County, found defendant fit to proceed on November 17,1986.
Defendant promptly moved for dismissal under CPL 30.30, focusing particularly on two large blocks of pre-readiness time: (1) the period from October 11, 1985 (the date the commitment order expired) to March 24, 1986 (the date defendant, having been found by DMH to be competent, was released to the City Correction Department) and (2) March 24, *105 1986 to October 16, 1986 (the date the People declared their readiness). The People countered by arguing, among other things, that the April 10, 1985 finding of incompetence effectively tolled the time they had to become ready and that, because there had been no intervening judicial findings in Queens County to the contrary, the entire period from that date to November 17, 1986, the date defendant was formally found competent in Queens County, was "excludable.”
In the course of the written and oral argument on the motion, it was disclosed that defendant’s competence had been the subject of a parallel proceeding in New York County during much of the two disputed periods. In April of 1985, he had been committed to DMH’s custody for a year by a New York County Supreme Court order and, after the expiration of the Queens County commitment, had been retained by DMH pursuant to that order. Moreover, after DMH had determined that defendant was competent (March 4, 1986) and released him (March 24, 1986), New York County Supreme Court conducted further competency proceedings and on September 24, 1986 found him fit to proceed. It is these "other proceedings” which the majority apparently now countenances as the core of its rationale for concluding that the People’s readiness responsibilities are excused under CPL 30.30 (4) (a).
II.
Analysis of CPL 30.30 cases involving felony charges generally begins with a recognition of the defendant’s burden of showing that more than six months has elapsed between the commencement of the action and the prosecution’s declaration of readiness (see, People v Berkowitz, 50 NY2d 333, 349). Once that burden is met, as it indisputably was met here, the People have the burden of establishing that "certain periods within that time should be excluded” (id., at 349; accord, People v Santos, 68 NY2d 859). If the People’s burden is not satisfied, dismissal must follow (People v Berkowitz, supra; cf., People v Lomax, 50 NY2d 351).
Significantly, during the course of these proceedings, up to five separate theories have been advanced in an effort to support the People’s position. In their initial response to the CPL 30.30 motion, the People relied principally on a claim that the entire disputed period was excludable under CPL 30.30 (3) (c) (i) because defendant’s prior parole status had been revoked. When that claim proved factually inaccurate, *106 the People shifted to their alternative position that the entire disputed period should be excluded because, regardless of what had transpired in New York County, the Queens County finding of incompetence was unaffected and continued to be the controlling factor until defendant was declared competent in Queens County on November 17, 1986. Evidently dissatisfied with that approach, the trial court fashioned another theory, holding that defendant could not have been prejudiced by the People’s delay because the concurrent finding of incompetence in New York County precluded defendant from arguing that he was, in fact, competent during much of the disputed periods. On defendant’s appeal from his conviction, the Appellate Division used yet another theory based on the exclusion provided in CPL 30.30 (4) (c). Now, in its effort to uphold defendant’s prosecution, this Court has apparently carved out a new theory that blends the argument the trial court rejected with a variation on the one the trial court adopted based on the existence of an incompetency finding in a different criminal proceeding conducted in a neighboring county. We believe that none of the rationales can rescue the People from their failure to be ready in accordance with the statute’s demands.
III.
Although the majority states that its holding is based on “the interrelated effect of two orders of New York State Supreme Court” (majority opn, at 102 [emphasis supplied]), it repeatedly declines to analyze the significance of the Queens County limited six-month commitment order in relation to defendant’s CPL 30.30 claim. Thus, notwithstanding its reference to “two orders,” the centerpiece of the majority’s analysis is the fact that there was an "outstanding determination of New York County Supreme Court that defendant was an incapacitated person and remained unfit to proceed until that court’s finding of competency on September 24, 1986” (majority opn, at 102). Based on this fact, the majority invokes CPL 30.30 (4) (a)’s exclusion for “the period during which defendant is incompetent to stand trial.” However, nowhere does the majority explain how a determination in New York County, "parallel” or otherwise, can serve to establish the existence of a "period during which defendant [wa]s incompetent to stand trial” in this Queens County action. In fact, the New York County finding of incompetence had no legal significance in the Queens County prosecution currently under review.
*107 A defendant’s “incompetence” or “unfitness” to stand trial does not exist in the abstract. Rather, that legal status comes into being only after a formal adjudication conducted pursuant to CPL article 730. Certainly, CPL 30.30 (4) (a)’s reference to the “period during which defendant is incompetent” contemplates only periods of adjudicated incompetency.
It is elementary that a judicial finding of incompetency is binding only in the proceeding in which it is made. Direct authority for that proposition may be found in CPL 730.60 (2), which embodies the principle set forth in Pate v Robinson (383 US 375, 378, 387, cited at majority opn, at 102) and provides that "the criminal action pending * * * in the court that issued [the retention or commitment] order is suspended until the superintendent of the institution in which the defendant is confined determines that [the defendant] is no longer an incapacitated person” (emphasis supplied). Even the People in this case unequivocally acknowledged that separate criminal actions require separate CPL article 730 proceedings when they adopted the position that “it was possible to be found fit in New York and not fit in Queens.” Further, the fact that the trial court in this Queens County proceeding found it necessary to conduct its own CPL article 730 inquiry once the matter was recalendared, notwithstanding the existence of a prior “parallel” completed inquiry in New York County, demonstrates that the New York County adjudication, which according to the majority remained in effect from April of 1985 until at least July of 1986 (majority opn, at 102, and n 4), was not binding in the Queens County action.
Despite the clear language of CPL 730.60 (2) limiting the effective reach of a commitment order, the majority makes the rather startling assertion that under “fundamental principles of criminal justice” the New York County incompetency determination in this case “had an effect beyond the particular CPL article 730 [proceeding] in which it was made” (majority opn, at 103). However, it never explains precisely what that effect was and even fails to specify what “fundamental” legal principle it is alluding to. To the extent that the majority implies that the New York County determination could be legally binding in the Queens County action either as “an issue determined by that court” or by virtue of some rule requiring adoption of a "commonsense conclusion” (majority opn, at 103), the majority’s analysis is thoroughly unsupported. Although the New York County court in which the determina *108 tian was made and the Queens County court in which the criminal action against defendant was pending are both units of the Supreme Court, a State-wide entity, there is no rule of reciprocity in this State and any suggestion that a finding in one criminal court is binding in the other without further judicial proceedings on the question is inconsistent with the basic organization of our court system.
Thus, the period during which the New York County finding of incompetence was extant was not a "period during which defendant [wa]s incompetent” in the Queens County action as that term is used in CPL 30.30 (4) (a). Indeed, the flaw in the majority’s conclusion to the contrary is evident from its own statement that "the New York County Supreme Court determination, as long as it remained in effect, would have been a legal and constitutional bar to defendant’s prosecution and conviction in Queens County” (majority opn, at 103 [emphasis supplied]). If anything, it would have been defendant’s actual incompetence, not a judicial "determination” of incompetence, that operated as a temporary bar to prosecution. The "determination” on which the majority relies was merely a formal adjudication that at a particular point in time defendant was incompetent. It had no other independent legal significance, and it certainly did not establish defendant’s ongoing actual incompetence in the transcendent sense that the majority suggests. Accordingly, the New York County incompetency determination did not excuse the Queens County District Attorney’s failure to become ready in a timely manner after DMH’s administrative determination that defendant was competent to proceed.
To the extent that the majority’s holding rests on the unspoken premise that any steps taken to become trial ready in Queens County would have been futile, its analysis is plainly misinformed. Had the Queens County District Attorney taken the necessary steps to revive the prosecution when defendant was released from DMH custody in March of 1986, the Queens County Supreme Court could have immediately directed further psychiatric examinations, as the New York County Supreme Court did; alternatively, arrangements could have been made, with the consent of the parties, to coordinate the CPL article 730 proceedings in both counties for the sake of speed and judicial economy. In any event, the required CPL article 730 proceedings would have gone forward and the case could then have proceeded to a prompt disposition. The circumstance that prevented the proceedings from unfolding in *109 this orderly and timely manner was not the extant New York County incompetency determination, which was in the process of being reviewed during much of the period in question; rather it was the laxity of the Queens County District Attorney’s office.
Similarly, to the extent that the majority’s holding rests on the existence of the extant Queens County finding of incompetency (see, majority opn, at 102, 102-103 ["period properly exempted under CPL 30.30 (4) (a)” "where defendant remained an incapacitated person by virtue of the interrelated effect of two orders of New York State Supreme Court”; emphasis supplied]), its analysis does not withstand scrutiny. Even if, as the majority asserts, that finding remained in effect until November 17, 1986, when it was judicially determined in Queens County that defendant was fit to proceed, the People could not claim the benefit of the exclusion because of the statutory requirement that any period excluded on this ground be a "reasonable” one.
Here, the only reason that the trial court’s April 10, 1985 finding of incompetence even theoretically remained "in effect” for so long was that the People failed to take any steps of their own to keep track of their criminal action and to place the matter back on the trial court’s calendar so that the competency question could be reviewed. This failure was not the product of any genuine need of the People for additional time to prepare. Nor was it the product of a reasoned choice by the People to forgo pursuing the case on the theory that further action would be futile in light of a concurrent incompetency finding in a neighboring county (cf., People v Bratton, 65 NY2d 675). Rather, the delay was attributable solely to the People’s negligent failure to follow up on their case after the court’s commitment order had expired. Indeed, accepting the proposition suggested by the majority’s analysis would enable a District Attorney’s office indefinitely to extend its own excludable time by simply failing to take the action necessary to change the case’s status quo. Surely, that is not, and cannot be, the law.
The unreasonableness of the period of delay that occurred while the Queens County incompetency finding was outstanding also becomes evident when the conduct of the Queens County District Attorney’s office is compared to that of the New York County District Attorney’s office. When DMH determined on March 4, 1986 that defendant was no longer unfit, *110 the latter promptly placed the case back on the calendar, prompting further judicial action and, ultimately, a final disposition of the New York County charges by September 24, 1986. If it was feasible for the New York County District Attorney to have taken such steps, it was also both feasible and reasonable for his Queens County counterpart to do so. It is no excuse that "Mid-Hudson never notified the Queens County District Attorney or Supreme Court * * * of defendant’s discharge to Bellevue” (majority opn, at 103, n 5). The Queens County District Attorney’s failure to take similar steps at any point after the expiration of the Queens County commitment order, or at least after DMH’s March 4, 1986 determination of competence, belies any claim the People might now make as to the "reasonableness” of the entire 19-month period during which the Queens incompetency finding was theoretically "in effect.”
It is evident from the foregoing that no theory supports the conclusion that the People satisfied their burden of showing the existence of sufficient "excludable” time. Moreover, there is no sound reason for the Court to strain, contrary to the letter, spirit and purpose of CPL 30.30, to uphold this belated prosecution. The prosecutorial inaction in issue falls squarely within the range of conduct that the Legislature meant to regulate when it enacted CPL 30.30 and provided for mandatory dismissals in cases delayed because of prosecutorial indifference (see generally, People v Anderson, 66 NY2d 529; People v Worley, 66 NY2d 523, 527; People v Brothers, 50 NY2d 413). The delay in this case was directly traceable to a decision by the Queens County District Attorney’s office to abdicate its responsibility for monitoring cases involving incompetent defendants and to rely instead on DMH, a State agency that is neither principally concerned with law enforcement nor statutorily charged with CPL 30.30 readiness responsibilities. A prosecutor may not so easily slough off its statutory duty. Having made its decision, the People created a risk that some of the prosecutions for which it was responsible would "fall through the cracks” and, as a result, would languish unnoticed while the deadlines carefully crafted by the Legislature slipped by. It was precisely this type of institutionalized indifference that CPL 30.30 was enacted to combat. Accordingly, we dissent from the majority’s decision to remit for a new trial and would instead dismiss the indictment.
*111 Chief Judge Wachtler and Judges Simons and Kaye concur with Judge Hancock, Jr.; Judge Titone and Bellacosa dissent in part and vote to reverse and dismiss the indictments in a separate opinion.
Order reversed, etc.