OPINION OF THE COURT
Joseph A. Zayas, J.
Defendant, Hakeem Baldea, moves, pursuant to CPL 30.30 (1) (a), to dismiss the indictment charging him with burglary in the first degree (Penal Law § 140.30 [3]) and related charges. The People oppose the motion, arguing that their plea negotiations with a codefendant who had waived his speedy trial rights constituted an-“exceptional circumstance” which rendered a six-week period of delay excludable under the speedy trial statute. Defendant’s motion requires the court to decide whether a codefendant’s speedy trial waiver to engage in plea negotiations is binding upon a defendant who has expressly chosen not to extend his own waiver of his speedy trial rights, such that it tolled the speedy trial clock as to defendant. This is an important question in light of the commonplace nature of plea negotiations in our criminal justice system and the persistent backlogs in criminal prosecutions, especially multiple-defendant prosecutions, across the state.
The only delay that is the subject of dispute in this case is a discrete six-week period of time within a pre-indictment, pre-readiness period (from June 16, 2015, the date of the expiration of defendant’s speedy trial waiver, to July 28, 2015, the date of the expiration of codefendant’s waiver). Because a co-defendant’s speedy trial waiver is not binding on a non-waiving, non-consenting defendant and does not toll the readiness period as to that non-waiving defendant,, the court finds that the delay caused by the prosecutor’s desire to engage in purported “plea negotiations” with the waiving codefendant is not an exceptional circumstance under CPL 30.30 (4) (g) and therefore does not provide a basis upon which to exclude the discrete period as to defendant. Accordingly, defendant’s motion is granted and the indictment is dismissed pursuant to CPL 30.30 (1).
*780 Background
On May 5, 2015, defendant and his codefendant were arraigned on the felony complaint and the matter was adjourned to May 19, 2015. During the arraignment, defendant and the codefendant signed a waiver agreement in which they explicitly waived “all constitutional rights to speedy trial as well as statutory rights under Sections 30.30 [and] 180.80 ... of the Criminal Procedure Law” at least until June 2, 2015. The execution of this agreement permitted the parties to engage in “pre-indictment dispositional conferencing” (i.e., plea bargaining) with the District Attorney’s Office. On May 19, 2015, defendant and codefendant extended the waiver until June 16, 2015, and consented to an adjournment to June 2, 2015. On June 2, 2015, however, defendant, having rejected the plea offer by the People, refused to extend the waiver of his speedy trial rights beyond the waiver date of June 16, 2015, and the People requested an adjournment for “grand jury action.” When the codefendant’s case was later called on the record in the absence of defendant and his defense counsel, however, the codefendant orally extended his speedy trial waiver to July 28, 2015.
In response to defendant’s CPL 30.30 motion to dismiss, the People concede that defendant did not extend his speedy trial waiver beyond June 16, 2015, or in any way consent to the adjournment to July 14, 2015 or beyond July 28, 2015. Indeed, the People do not dispute that defendant and his defense counsel were not even present for the calendar call during which the codefendant extended his own speedy trial waiver until July 28, 2015. Nevertheless, the People argue that the period from June 16, 2015 to July 28, 2015 is excludable as to defendant because the People were engaged in “plea negotiations” with a codefendant who had extended his speedy trial waiver until July 28, 2015. During oral argument on the motion, however, the People admitted that no actual plea negotiations with the codefendant were conducted during the period from June 16, 2015 to July 28, 2015. Finally, the People concede that they did not answer ready until December 22, 2015, and that if the court were to find that the delay from June 16 to July 28, 2015 was chargeable to the People, dismissal of the indictment would be warranted.
Discussion
On a motion to dismiss pursuant to CPL 30.30, once a defendant has shown a delay of more than six months, as defend *781 ant has done in this case, the burden is on the People to prove that certain periods within that time should be excluded (see CPL 30.30 [1] [a]; [4]; People v Barden, 27 NY3d 550, 553 [2016]; People v Santos, 68 NY2d 859, 861 [1986]; People v Berkowitz, 50 NY2d 333, 349 [1980]). One such exclusion of time recognized by the statute involves “periods of delay occasioned by exceptional circumstances” (CPL 30.30 [4] [g]). Criminal Procedure Law § 30.30 (4) (g) provides, in pertinent part, that
“the following periods must be excluded: . . .
“periods of delay occasioned by exceptional circumstances, including but not limited to, the period of delay resulting from a continuance granted at the request of a district attorney if (i) the continuance is granted because of the unavailability of evidence material to the people’s case, when the district attorney has exercised due diligence to obtain such evidence and there are reasonable grounds to believe that such evidence will become available in a reasonable period;. or (ii) the continuance is granted to allow the district attorney additional time to prepare the people’s case and additional time is justified by the exceptional circumstances of the case.”
Here, although the People never contemporaneously requested a continuance based upon a purported exceptional circumstance in defendant’s case, the People now argue that the period of delay (from June 16 to July 28, 2015) occasioned by the codefendant’s speedy trial waiver to engage in continued plea negotiations with the People should be excluded as an “exceptional circumstance.”
As a preliminary matter, the court rejects the argument that plea negotiations, which are an essential feature of virtually every criminal case in the criminal justice system, constitute an exceptional circumstance under CPL 30.30 (4) (g). Significantly, plea bargaining is a long-standing, commonplace occurrence in the criminal justice system, such that it is the rule and not the exception in the overwhelming number of criminal cases (see Missouri v Frye, 566 US —, —, 132 S Ct 1399, 1407 [2012] [“The reality is that plea bargains have become so central to the administration of the criminal justice system”]; Lafler v Cooper, 566 US —, —, 132 S Ct 1376, 1388 [2012] [“(T)he reality (is) that criminal justice today is for the most part a system of pleas, not a system of trials”]; Padilla v *782 Kentucky, 559 US 356, 372 [2010] [“Pleas account for nearly 95% of all criminal convictions” at both the federal and state levels]; Bordenkircher v Hayes, 434 US 357, 361 [1978] [“Whatever might be the situation in an ideal world, the fact is that the guilty plea and the often concomitant plea bargain are important components of this country’s criminal justice system”] [internal quotation marks and brackets omitted]).
Indeed, nearly 85% of all criminal cases in Queens County are disposed of by plea (see NY State Unified Ct Sys Caseload Activity Report at 1 [2016]; see also Missouri v Frye, 566 US at —, 132 S Ct at 1407 [“Ninety-seven percent of federal convictions and ninety-four percent of state convictions are the result of guilty pleas”]; Andrew Keshner, OCA Reports Reduction in Rikers Felony Backlog, NYLJ, June 18, 2015 at 1, col 4 [reduction in the backlog of felony cases was due in large part to the plea bargaining process]). Moreover, the American Bar Association’s Criminal Justice Standards impose a duty on defense attorneys to “[e]xplore [d]isposition [w]ithout [t]rial,” which effectively means that all criminal cases should engender some form of plea negotiations (see ABA Standards for Criminal Justice, Defense Function Standards, standard 4-6.1 [3d ed 1993]).
In light of this ubiquity, the notion that routine plea bargaining constitutes an exceptional circumstance is rejected by this court. Ideally, plea negotiations, should be occurring throughout the pendency of every criminal case, from the arraignment to the start of trial. Plea negotiations should not, however, prevent the case from moving forward or otherwise prevent the People from being ready. Of course, delay occasioned by plea negotiations is usually accompanied by consent to the delay by the negotiating parties. Indeed, that is precisely how this case commenced — with both defendant and the codefendant signing waivers of, inter alia, their speedy trial rights. When defendant later explicitly refused to extend his speedy trial waiver beyond June 16, 2015 (i.e., when defendant later withdrew his consent), however, the speedy -trial clock began to run against the People. That the codefendant, unbeknownst to defendant, decided to extend his own speedy trial waiver to purportedly engage in further plea negotiations, cannot stop the speedy trial clock as to defendant, at least not during the pre-indictment, pre-readiness stages of a criminal prosecution and especially not when defendant is unaware that the codefendant was extending his waiver and consenting to the delay.
*783 Nevertheless, the People rely upon various Appellate Division cases — People v Fluellen (160 AD2d 219 [1st Dept 1990]) and People v Delvalle (265 AD2d 174 [1st Dept 1999]) — to argue that the delay here, which was exclusively attributable to the codefendant’s speedy trial waiver, constitutes an exceptional circumstance. The court finds that the People’s reliance on those cases, each of which was decided prior to People v Price (14 NY3d 61 [2010]), is misplaced.
As the Court of Appeals reiterated in Price (at 64), “[t]here is no precise definition of what constitutes an exceptional circumstance under CPL 30.30 (4) (g)” (quoting People v Smietana, 98 NY2d 336, 341 [2002]). This lack of precision is due to the fact that “[t]he Legislature enacted this catchall provision because it could not anticipate every situation that might warrant tolling of the speedy trial” clock (Smietana at 341). It is clear, however, that the exceptional circumstance exclusion applies “only when the People for practical reasons beyond their control cannot proceed with a legally viable prosecution” (Price at 64). Accordingly, the People, in seeking an exceptional circumstance exclusion, “may not rely on factors which do not actually prevent them from being ready to proceed to trial to justify a failure to timely announce readiness” (People v Seamans, 85 AD3d 1398, 1400 [3d Dept 2011], quoting Smietana at 341).
Furthermore, when certain circumstances make it impossible for the People to proceed, the Court of Appeals has noted that “the statute’s text contemplates that the prosecutor will seek a continuance from the court” (Price at 64). This is the preferred approach so that “the prosecutor [can] secure a prior judicial ruling as to exceptional circumstances rather than ask a court to apply the exclusion after the fact” (id.). Indeed, “[t]his would ensure that the defendant is kept abreast of the status of his case and the charges pending against him” (id.).
In People v Seamans, the Third Department considered whether delay caused by pre-indictment plea negotiations between the prosecutor and the codefendant, which required a codefendant to testify against the defendant in the grand jury, was an exceptional circumstance under CPL 30.30 (4) (g). Relying on the Court of Appeals decision in People v Price (14 NY3d 61 [2010]), the Seamans Court held that such delay did not constitute an exceptional circumstance under CPL 30.30 (4) (g) because the People “never sought a continuance while attempting to secure [the codefendant’s] grand jury testimony” *784 (Seamans at 1400). The Court also found that it was the People and not the codefendant who sought, as part of the plea arrangement, to have the codefendant testify in the grand jury, which signaled to the Court that the People were not “prohibited” from presenting defendant’s case to the grand jury without the codefendant’s testimony — they “merely preferred not to do so without it” (id.).
Applying Price and Seamans here, this court finds that the delay caused by the codefendant’s speedy trial waiver so that the codefendant could engage in purported pre-indictment, pre-readiness plea negotiations with the People does not constitute an exceptional circumstance. First, there is nothing in the record that demonstrates that the People, for “practical reasons beyond their control” {Price at 64), could not present defendant’s case to the grand jury after the expiration of defendant’s speedy trial waiver. Indeed, the People have not alleged that they lacked sufficient evidence to indict defendant without the codefendant. To the contrary, the People’s concession, in their response to defendant’s motion, that they did not put the case into the grand jury because they preferred to avoid “multiple grand jury presentments,” demonstrates that the People can point to no one factor that actually prevented them from being ready for trial which would justify their failure to announce ready in a timely fashion. In other words, the People were not “prohibited” from putting defendant’s case into the grand jury because of the codefendant’s purported plea negotiations arising from his speedy trial waiver — the People “just chose not to do so.” Alternatively, the People could have easily presented both cases to the grand jury and then resolved the codefend-ant’s case in any way they deemed advisable based upon the plea negotiations which were then purportedly pending.
Furthermore, the record in this case demonstrates that the purported “plea bargaining” that transpired between the prosecutor and codefendant’s counsel was perfunctory. Indeed, when the court questioned the prosecutor about his position on defendant’s CPL 30.30 motion, the prosecutor argued that the contested time should be excluded because “at [a] bare minimum” plea negotiations with the codefendant were ongoing. When the court later asked the prosecutor to clarify the extent of the plea negotiations, the prosecutor described it as one in which the prosecutor “received a message from [defense counsel]” but “never followed up on that phone call.” Inasmuch as the plea negotiation was cursory and lacked any earnest *785 ness, the court is unwilling to adopt a rule that would permit a prosecutor to have free reign to delay a multi-defendant case simply because the prosecutor asserts that plea negotiations with a waiving codefendant are ongoing. Indeed, the proposed rule is particularly troubling in cases in which the plea negotiation, like the negotiation here, are far from meaningful and merely involve the conveyance of an offer and an unreturned phone call by the prosecutor.
In addition, the prosecutor’s earlier concession during oral argument on the instant motion that the prosecutor actually did not put the case into the grand jury because the prosecutor was operating under the mistaken belief that defendant had waived his constitutional and statutory rights under CPL 30.30, when in fact only the codefendant had consented to such a waiver, suggests that the contested delay was ultimately caused by the inadvertent lapses of a busy trial prosecutor. And while the prosecutor has now refined his opposition to defendant’s motion by arguing that he did not put defendant’s case into the grand jury because he was relying on the co-defendant’s waiver and purported plea negotiations, this contention is belied by the fact that it took the prosecutor an additional 147 days past the expiration of the codefendant’s waiver to file a notice of voted indictment.
Under either theory advanced by the People, it is clear that the exceptional circumstance exclusion does not apply. Here, it cannot be fairly said that the People could not “proceed with a legally viable prosecution” because of “practical reasons beyond their control” by virtue of the codefendant’s purported plea negotiations {Price at 64). Instead, the People, in seeking an exceptional circumstance exclusion, are improperly relying upon “factors which do not actually prevent them from being ready to proceed to trial to justify a failure to timely announce readiness” (Seamans at 1400, quoting Smietana at 341).
Second, the People concededly never sought judicial intervention in the form of a continuance in defendant’s case so that the prosecutor could continue to engage in plea negotiations with the codefendant in the codefendant’s case. Indeed, had the People done so, this court would not be confronted with the situation that the Court of Appeals specifically cautioned against in Price — namely, an after-the-fact application of the CPL 30.30 (4) (g) exclusion when defendant is no longer in a position to be apprised of the status of his case.
Under these circumstances, the court finds that the pre-indictment, pre-readiness delay of 42 days (the delay from *786 June 16, 2015 to July 28, 2015) purportedly caused by the codefendant’s waiver is chargeable to the People (see People v Rios, 47 Misc 3d 999 [Sup Ct, Bronx County 2015, Newbauer, J.] [unnoticed pre-indictment delay caused by the codefend-ant’s desire to engage in pre-indictment plea negotiations with the prosecutor was chargeable to the People]).
Nevertheless, the People argue that the codefendant’s waiver of speedy trial time operates to effect a waiver on defendant despite the fact that defendant has expressly refused to waive his speedy trial rights and the fact that defendant was unaware that the codefendant’s case was being adjourned on consent of the codefendant to engage in plea negotiations. In support of this argument the People rely on two First Department decisions — People v Fluellen (160 AD2d 219 [1st Dept 1990]) and People v Delvalle (265 AD2d 174 [1st Dept 1999]) — and the interplay between those two cases to argue that the delay in this case warrants exclusion as an “exceptional circumstance” under CPL 30.30 (4) (g).
It is true that the Appellate Division in People v Delvalle (265 AD2d 174 [1st Dept 1999]) held that post-indictment delay caused by a codefendant’s plea negotiations is excludable under CPL 30.30 (4) (d), which permits the exclusion of “a reasonable period of delay when the defendant is joined for trial with a co-defendant as to whom the time for trial pursuant to this section has not run and good cause is not shown for granting a severance” (emphasis added). Because CPL 30.30 (4) (d), by its very explicit statutory terms, is only applicable post-indictment (since felonies may only be tried post-indictment), Delvalle is so obviously inapplicable here. Moreover, in Delvalle, unlike this case, the prosecutor gave the codefendants record notice of the delay and all of the codefendants consented to it. Furthermore, Delvalle involved post-readiness plea negotiations, which is analytically different from a case, such as defendant’s, which was in a pre-indictment, pre-readiness posture. Indeed, a defendant seeking redress in a post-indictment case due to delays caused by a codefendant who continues to engage in plea negotiations can file a motion for severance (see People v Rodriguez, 184 AD2d 317 [1st Dept 1992] [in the absence of a severance motion, delays caused by co-indictees’ post-indictment plea negotiations were properly excluded]). By contrast, a defendant, like defendant here, is statutorily barred from filing such a motion in a pre-indictment matter (see CPL 200.40).
In Fluellen, the Court held that a period of delay occasioned by a codefendant’s stated desire to testify in the grand jury *787 was excludable as an exceptional circumstance under CPL 30.30 (4) (g). The Court stated
“[w]e adopt the position taken in People v Regan [110 Misc 2d 12, 17 (Sup Ct, NY County 1981)][*] that the considerations underlying CPL 30.30 (4) (d), which provides for the exclusion of ‘a reasonable period of delay when the defendant is joined for trial with a co-defendant’, are also applicable to the preindictment stage in determining whether delays occasioned by a codefendant may constitute an exceptional circumstance under CPL 30.30 (4) (g) as to a defendant who fails to object contemporaneously to the delay” (Fluellen at 222).
Significant to the Court’s analysis was that the “defendant at no time objected to the continuance for the purpose of permitting the codefendants to testify,” and that the delay was “in no way caused by lack of due diligence on the part of the People” (id.; see also People v Sorce, 214 AD2d 756, 756 [2d Dept 1995] [relying on Fluellen, delay was “excludable as an ‘exceptional circumstance’ since the codefendant indicated that she wanted to testify before the Grand Jury and her attorney was unavailable”]; People v Khan, 172 AD2d 231, 232 [1st Dept 1991] [relying on Fluellen, delay caused by “codefendant’s desire to testify before the Grand Jury should be held to fall within the exceptional circumstances exclusion and a reasonable period of delay should be excluded where a defendant fails to object contemporaneously to such delay”]).
Fluellen is unavailing to the People here, however, for two very important reasons. First, the delay in this case was caused by the codefendant’s purported desire to engage in pre- *788 indictment plea negotiations — not his desire to testify in the grand jury. This factual difference categorically distinguishes Fluellen from the facts of defendant’s case and warrants a different result. There are very good reasons for excluding periods of pre-indictment delay occasioned by a codefendant’s desire to testify in the grand jury (see Sorce; Khan), but there are not any good reasons for excluding periods of pre-indictment delay occasioned by a codefendant’s desire to engage in plea negotiations, especially when the plea negotiations (and the accompanying delay) are undisclosed to defendant and unbeknownst to him.
Second, the delay here, unlike the delay in Fluellen, could not have been contemporaneously objected to by defendant because the codefendant’s case was not called in court at the same time as the defendant’s case. The record demonstrates that during the two crucial calendar calls on June 16, 2015, and July 14, 2015, defense counsel was most assuredly unaware that the codefendant had extended the waiver of his speedy trial rights six weeks past the expiration of defendant’s speedy trial waiver because the prosecutor failed to notify defendant of this occurrence. The transcripts establish that the calendar calls were cursory appearances in which the sole issues discussed were defendant’s rejection of the People’s offer and defendant’s desire to have the case adjourned for grand jury action. Absent from the transcripts is any indication that defense counsel was given notice of a delay for plea negotiations — let alone notice that the delay was caused by the co-defendant’s extension of the speedy trial waiver. Counsel’s unawareness is further underscored by defendant’s moving papers in support of the instant motion in which defendant states that “he did know that the co-defendant consented to the adjournment until the People responded to the motion.”
Given the foregoing, it is clear that the rule in Fluellen does not apply in this case. And the court declines to permit a defendant’s statutory speedy trial rights to be so easily forfeited. The court holds that once defendant has effectively withdrawn his speedy trial waiver and expressed his lack of consent to any further pre-indictment adjournments, that lack of consent cannot be undone, without defendant’s (or the court’s) contemporaneous knowledge, by a codéfendant and prosecutor who are purportedly engaging in separate, undisclosed pre-indictment plea negotiations.
Of course, the People do not contend that defendant “request [ed]” or “consented]” to the delay (CPL 30.30 [4] [b]), or *789 was even aware of the undisclosed reason for it. And it is well settled that “consent to an adjournment must be clearly expressed by the defendant or defense counsel to relieve the People of the responsibility for that portion of the delay” (People v Liotta, 79 NY2d 841, 843 [1992]). In other words, defense counsel’s “mere failure to object to an adjournment . . . will not be deemed consent” (Peter Preiser, Practice Commentaries, McKinney’s Cons Law of NY, Book 11A, CPL 30.30 at 214 [2003 ed]; Liotta; People v Williams, 32 AD3d 403, 405 [2d Dept 2006] [time was chargeable to the People because the record failed to demonstrate that defendant expressly consented to the adjournment]; People v Hall, 213 AD2d 558, 558 [2d Dept 1995] [time was chargeable to People because “record . . . was devoid of any clear consent expressed by the defendant”]).
Again, here the unequivocal record demonstrates that defense counsel, during the contested period, never once requested or consented to an adjournment that would have stopped the speedy trial clock. The transcripts from both calendar calls establish that defense counsel’s sole application during those very brief court appearances was to have the court adjourn defendant’s case for grand jury action, and nothing else. Indeed, absent from the transcript of either calendar call is a “clearly expressed” statement by defense counsel requesting or consenting to an adjournment. Rather, the record demonstrates that defense counsel, by petitioning the court to adjourn the case for grand jury action, telegraphed defendant’s twin desires of wanting to terminate all pre-indictment plea bargaining negotiations with the prosecutor and intending for the speedy trial clock to run after the expiration of defendant’s speedy trial waiver.
Inasmuch as there is no basis upon which to find the subject period of delay excludable, the court hereby grants defendant’s motion to dismiss the indictment.
Because the six-month statutory period commenced on May 5, 2015, the People were required to be ready by November 5, 2015, which amounts to 184 days. The parties agree that the period from May 5 to June 16, 2015 is excludable (since defendant signed a waiver of his speedy trial rights during this period), and that the period from July 29 to December 22 (when the People first filed a certificate of readiness) is chargeable to the People. In sum, the court finds that the following periods of delay are chargeable to the People: the 42-day period from June 16, 2015 to July 28, 2015; the 141-day period from July *790 29, 2015 to December 17, 2015; and the five-day period from December 17, 2015 to December 22, 2015. Defendant concedes that the period following December 22, 2015 is excludable.
Inasmuch as a total of 188 days (42 + 141 + 5 = 188) are chargeable to the People, the indictment is dismissed pursuant to CPL 30.30 (1).

* In Regan, the court, recognizing the unique circumstances of pre-indictment delay in a multiple defendant case in which one of the codefend-ants makes a timely request to testify in the grand jury, held that the delay resulting from the codefendant’s failure to appear before the grand jury after he had asserted his statutory rights under CPL 190.50 constituted an “exceptional circumstance” under CPL 30.30 (4) (g). In reaching this conclusion, the court noted that CPL 30.30 “does not explicitly deal with periods of preindictment delay caused by the often unique procedural problems inherent in Grand Jury presentations” (110 Mise 2d at 16). The court recognized the importance of notice in multiple defendant cases and stated that
“[a]ll of the defendants should be notified of the prosecutor’s intention to appear before the court, so that the nontestifying defendants may contest any continuance and move for a separate Grand Jury presentation as to them, consent to the delay, or obtain a ruling from the court as to the propriety of the delay” (id. at 18).
Notably, that kind of notice was not given to defendant in the instant case.