MEMORANDUM.
***930 The order of the Appellate Division, insofar as appealed from, should be affirmed. Viewing the evidence in the light most ***931 favorable to the People (see People v. Contes, 60 N.Y.2d 620, 621, 467 N.Y.S.2d 349, 454 N.E.2d 932 [1983] ), we conclude that the evidence is legally insufficient to support the conviction of conspiracy in the second degree ( Penal Law § 105.15 ) because "there is [no] valid line of reasoning and permissible inferences from which a rational jury could have found the element[ ] of [agreement] proved beyond a reasonable doubt" ( People v. Danielson, 9 N.Y.3d 342, 349, 849 N.Y.S.2d 480, 880 N.E.2d 1 [2007] [internal quotation marks omitted]; see generally People v. Bleakley, 69 N.Y.2d 490, 495, 515 N.Y.S.2d 761, 508 N.E.2d 672 [1987] ).
"The elements of [a] conspiracy offense" generally may be characterized as: "first, the specific intent that a crime be performed; and second, an agreement with another person to engage in or cause that crime to be performed" (William C. Donnino, Practice Commentary, McKinney's Cons Laws of NY, Book 38, Penal Law § 105.00 ). Indeed, "it is fundamental *563 that [to] be convicted of conspiracy" ( People v. Berkowitz, 50 N.Y.2d 333, 343, 428 N.Y.S.2d 927, 406 N.E.2d 783 [1980] ) "the defendant [must] enter[ ] into a criminal agreement with at least one other person" ( People v. Treuber, 64 N.Y.2d 817, 818, 486 N.Y.S.2d 926, 476 N.E.2d 325 [1985] ). " '[O]nce an illicit agreement is shown, the overt act of any conspirator may be attributed to other conspirators to establish the offense of conspiracy' " ( Berkowitz, 50 N.Y.2d at 341, 428 N.Y.S.2d 927, 406 N.E.2d 783, quoting People v. McGee, 49 N.Y.2d 48, 57, 424 N.Y.S.2d 157, 399 N.E.2d 1177 [1979] ).
Here, at the core of the People's case is evidence of defendant's presence at various gang meetings at which the crime intended was discussed by gang members other than defendant. Under the circumstances of this case, to conclude that defendant's presence at such gatherings alone was sufficient to establish agreement to join a plot would be to equate his passive act of "being present" with the affirmative act of "agreeing" to engage in a criminal conspiracy discussed at those assemblies. The law does not contain a presumption of agreement based on sheer presence at a meeting at which a conspiracy is discussed (see Penal Law § 105.00 et seq. ), and we share the view of the federal courts that mere "knowledge of the existence and goals of a conspiracy does not of itself make one a coconspirator" ( United States v. Ceballos, 340 F.3d 115, 124 [2d Cir2003] [internal quotation marks omitted]; see generally United States v. Shabani, 513 U.S. 10, 16, 115 S.Ct. 382, 130 L.Ed.2d 225 [1994] [providing that "the criminal agreement itself is the actus reus" of conspiracy] ).
In so concluding, we are careful not to fix boundaries with respect to the circumstances that may give rise to an agreement. Conspiracy is criminalized to "protect society from the ***932 dangers of concerted criminal activity" ( United States v. Feola, 420 U.S. 671, 693, 95 S.Ct. 1255, 43 L.Ed.2d 541 [1975] ), the very nature of which does not lend itself to transparency. Whereas an agreement in a business context may be manifested with precision, namely, through a contract, a correspondence, or conspicuous dialogue, an agreement in the criminal realm typically would result from more clandestine and ambiguous activity.
Consequently, we decline to define-and therefore to limit-the circumstances giving rise to an agreement. On this record, however, we agree with the Appellate Division that there is no valid line of *564 reasoning and permissible inferences from which a rational jury could have found the element of agreement proved beyond a reasonable doubt.