People v Moreno (2021 NY Slip Op 02316)





People v Moreno


2021 NY Slip Op 02316


Decided on April 14, 2021


Appellate Division, Second Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on April 14, 2021
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

CHERYL E. CHAMBERS, J.P.
LEONARD B. AUSTIN
ROBERT J. MILLER
PAUL WOOTEN, JJ.


2018-12089
 (Ind. No. 145/15)

[*1]The People of the State of New York, respondent,
v
Elvis Moreno, appellant.


Portale Randazzo LLP, White Plains, NY (Richard A. Portale and Vivian Shevitz of counsel), for appellant.
Michael E. McMahon, District Attorney, Staten Island, NY (Morrie E. Kleinbart, Alexander Fumelli, and Thomas B. Litsky of counsel), for respondent.



DECISION & ORDER
Appeal by the defendant from a judgment of the Supreme Court, Richmond County (William Garnett, J.), rendered July 31, 2018, convicting him of criminal sale of a controlled substance in the third degree and conspiracy in the fourth degree, upon a jury verdict, and imposing sentence.
ORDERED that the judgment is reversed, on the law and on the facts, the indictment is dismissed, and the matter is remitted to the Supreme Court, Richmond County, for further proceedings consistent with CPL 160.50.
This case arises from an investigation into the sale of heroin in Staten Island starting in July 2014. During the course of the investigation, an undercover police officer allegedly purchased heroin on multiple occasions from a man named Justin Bonilla and from unidentified female associates of Bonilla. Following Bonilla's arrest on March 1, 2015, Bonilla's brother, Robert Alvarado, "reached out to" the undercover officer by making a phone call to indicate that "he would be taking over operations and . . . running things." The undercover officer then interacted with Alvarado to purchase heroin on several occasions, with the exchange of heroin for money allegedly made by Alvarado or his associate, Anthony Cianci.
As part of the ongoing investigation, police wiretapped phone numbers used by Bonilla and Alvarado starting in December 2014, and the defendant's voice could be heard on several wiretapped calls starting in February 2015. During one of the calls, Alvarado told the defendant they were "in serious business." On other occasions, Alvarado made vague references to needing to give the defendant "chicken." Further, during a conversation on April 6, 2015, the defendant made statements about how Alvarado would need to "sit through a five-hour class" and take a "road test" to obtain a license.
On April 25, 2015, at approximately 10:48 a.m., Alvarado arrived at the defendant's home by car, and shortly thereafter, the defendant got into the front passenger seat of the vehicle and they drove away. Detective James Malpeso followed the vehicle, which eventually stopped in front of a commercial driving school at approximately 11:15 a.m. The defendant got out of the vehicle [*2]and entered the driving school for about five minutes before returning to the vehicle. The vehicle started to move, and Detective Malpeso lost sight of it. The undercover officer then contacted Alvarado to arrange a meeting to purchase heroin. During a call at approximately 2:03 p.m., Alvarado told the undercover officer he would be in Staten Island "all day" because "I gotta fucking do this thing for my license." Alvarado and the undercover officer agreed to meet near Arthur Kill Road and Huguenot Avenue.
When the undercover officer reached the meeting place, he was initially unable to locate Alvarado's vehicle, and described his location to Alvarado over the phone. During that conversation, the undercover officer heard the defendant in the background state to Alvarado, "no, he's over in this direction compared to you, tell him to come towards the service road." The undercover officer then walked towards the service road and saw Alvarado's vehicle on the other side of the road. As the undercover officer crossed the service road, he observed the defendant (who he had never seen before) in the passenger seat. The defendant made a hand gesture as if to wave the undercover officer to approach the vehicle. The undercover officer then got into the back seat of the vehicle and negotiated the purchase of 25 bags of heroin from Alvarado for $140. During the exchange, which lasted for about a minute and a half to two minutes, the undercover officer spoke only to Alvarado, and the defendant did not say or do anything.
Following the defendant's arrest, he was charged with, inter alia, two counts of criminal sale of a controlled substance in the third degree, one count pertaining to the sale on April 25, 2015, and the other pertaining to an alleged sale on May 1, 2015, and one count of conspiracy in the fourth degree. After a jury trial, the defendant was acquitted of the charge of criminal sale of a controlled substance pertaining to the alleged sale on May 1, 2015, but was convicted of the other count of criminal sale of a controlled substance and the count of conspiracy in the fourth degree. The defendant appeals, arguing, among other things, that the evidence was legally insufficient to establish his guilt of both counts beyond a reasonable doubt and that the verdict of guilt as to both counts was against the weight of the evidence.
In evaluating whether evidence presented at trial was legally sufficient, a court must "determine whether there is any valid line of reasoning and permissible inferences which could lead a rational person to the conclusion reached by the jury on the basis of the evidence at trial" (People v Bleakley, 69 NY2d 490, 495; see People v Contes, 60 NY2d 620, 621). Here, viewing the evidence in the light most favorable to the People (see People v Contes, 60 NY2d at 621), we find that it was legally insufficient to establish the defendant's guilt of criminal sale of a controlled substance in the third degree and conspiracy in the fourth degree beyond a reasonable doubt.
A person is guilty of criminal sale of a controlled substance in the third degree when he or she "knowingly and unlawfully" sells a narcotic drug (Penal Law 220.39[1]). "To establish a defendant's guilt of this crime under a theory of accomplice liability, the People must prove that the defendant shared the requisite mens rea, to knowingly and unlawfully sell drugs, and that, in furtherance thereof, the defendant solicited, requested, commanded, importuned, or intentionally aided the seller in the commission of the crime" (People v Curry, 112 AD3d 843, 844 [internal quotation marks omitted]; see Penal Law § 20.00). "'Mere presence at the scene of a crime with knowledge of its perpetration does not render the observer accessorily liable therefor'" (People v Karchefski, 102 AD2d 856, 857, quoting People v Reyes, 82 AD2d 925, 926; see People v Labelle, 18 NY2d 405, 412).
Here, the evidence was legally insufficient to establish that the defendant solicited, requested, commanded, importuned, or intentionally aided Alvarado in the commission of the heroin sale on April 25, 2015, or that the defendant shared Alvarado's state of mind to knowingly and unlawfully sell heroin. The few words uttered by the defendant to Alvarado before the undercover officer entered the vehicle did not reflect the defendant's awareness of an imminent sale of heroin, let alone his intent to aid in the commission of the sale (see People v Vazquez, 115 AD2d 626, 627; see also People v Fonerin, 159 AD3d 717, 719). Further, there was no evidence that the defendant's alleged hand gesture to the undercover officer was made in response to any request to purchase heroin or that the defendant was even aware of the undercover officer's reason for approaching the [*3]vehicle at that time (cf. People v Wylie, 180 AD2d 774, 775). To the contrary, the evidence reflects that the defendant met Alvarado on April 25, 2015, to accompany Alvarado to the driving school before Alvarado and the undercover officer arranged the meeting, and that Alvarado told the undercover officer prior to the meeting that he had to "do this thing for my license." Thus, the defendant's mere presence during the sale, with knowledge of what was transpiring at that time, was insufficient to establish the defendant's guilt of criminal sale of a controlled substance in the third degree (see People v Karchefski, 102 AD2d at 857).
Furthermore, the evidence was legally insufficient to establish the defendant's guilt of conspiracy in the fourth degree beyond a reasonable doubt. A person is guilty of conspiracy in the fourth degree when, "with intent that conduct constituting . . . a class B or class C felony be performed, he or she agrees with one or more persons to engage in or cause the performance of such conduct" (Penal Law § 105.10[1]). Further, "[a] person shall not be convicted of conspiracy unless an overt act is alleged and proved to have been committed by one of the conspirators in furtherance of the conspiracy" (Penal Law § 105.20; see People v Ramos, 19 NY3d 417, 420). "Once an illicit agreement is shown, the overt act of any conspirator may be attributed to other conspirators to establish the offense of conspiracy" (People v McGee, 49 NY2d 48, 57). However, a defendant's mere presence at a meeting at which a crime is discussed, or mere knowledge of the goals of a conspiracy to commit a crime, is not sufficient to establish the defendant's guilt of conspiracy (see People v Reyes, 31 NY3d 930, 931).
Here, the evidence was legally insufficient to establish that the defendant entered into an agreement with Alvarado to sell heroin on April 25, 2015, since there was no evidence that the defendant participated in arranging the heroin sale or even had any discussion with Alvarado about selling heroin on that date (see id. at 931-932). Further, the People failed to present any evidence of an "overt act" connected to any statements made during the wiretapped calls between the defendant and Alvarado. Accordingly, the evidence was legally insufficient to establish the defendant's guilt of conspiracy in the fourth degree beyond a reasonable doubt.
For the same reasons, upon the exercise of our factual review power (see CPL 470.15[5]), we find that the verdict of guilt as to both counts was against the weight of the evidence (see People v Danielson, 9 NY3d 342, 348-349; People v Romero, 7 NY3d 633; People v Mateo, 2 NY3d 383, 410; People v Bleakley, 69 NY2d 490, 495).
In light of our determination, we need not reach the defendant's remaining contentions.
CHAMBERS, J.P., AUSTIN, MILLER and WOOTEN, JJ., concur.
ENTER:
Aprilanne Agostino
Clerk of the Court