People v Smith (2025 NY Slip Op 51840(U))

[*1]

People v Smith

2025 NY Slip Op 51840(U)

Decided on November 19, 2025

Criminal Court Of The City Of New York, New York County

Brown, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on November 19, 2025
Criminal Court of the City of New York, New York County

The People of the State of New York,

against
Jahnaye Smith, Defendant.

Docket No. CR-019382-25NY

Sarah Walther, The Legal Aid Society
Assistant District Attorney Katherine Murray, New York County District Attorney's Office

Marva C. Brown, J.

Jahnaye Smith, hereinafter "defendant," is charged with operating a motor vehicle while intoxicated (VTL 1192[3]), an unclassified misdemeanor, and various related charges. By Notice of Motion to Dismiss, dated October 3, 2025, and a supplemental Motion to Dismiss, dated October 14, 2025, the defense challenges the validity of the People's Certificate of Compliance (COC) and seeks dismissal pursuant to CPL 30.30. The defense also argues that the accusatory instrument is facially insufficient and must be dismissed. The defense also moves the Court by omnibus motion for various relief. The People oppose by motion filed October 22, 2025, and the defense replied on October 29, 2025. I. VALIDITY OF THE PEOPLE'S CERTIFICATE OF COMPLIANCE
Upon review of the submissions, the Court file and relevant legal authority, this court finds that the People's COC was valid, along with the accompanying Certificate of Readiness (COR). Under CPL 245.20(1), "the prosecution shall disclose to the defendant, and permit the defendant to discover, inspect, copy, photograph and test," all items enumerated in CPL 245.20(1) that are "in the possession, custody and control of the prosecution or persons under the prosecution's direction or control". "[A]ll items and information related to the prosecution of a charge in the possession of any New York state or local police or law enforcement agency shall be deemed to be in the possession of the prosecution" (CPL 245.20[2]; see also CPL 245.55[1] [prosecution must "ensure that a flow of information is maintained between the police and other investigative personnel and his or her office"]). Further, where material or information discoverable under CPL 240.20(1) exists but is not within the prosecutor's possession, custody or control, the prosecutor shall make "a diligent, good faith effort" to ascertain the existence such material to be made available for discovery (CPL 245.20[2]). However, "[t]he prosecutor shall not be required to obtain material or information if it may be obtained with use of a subpoena duces tecum where the defense is able to obtain the same material with the use of a subpoena duces tecum" (id.).
CPL 245.10(1)(a) requires the People to perform their initial discovery obligations on a case "as soon as practicable" but within twenty days after arraignment for incarcerated defendants, and, within thirty-five calendar days after arraignment for all others.[FN1]
Pursuant to [*2]CPL 245.50(1), when the prosecution has exercised due diligence and acted in good faith in making reasonable inquiries and efforts to obtain and provide all required discovery, it shall serve upon the defendant and file with the court a certificate of compliance (COC). Any COC shall state that, "after exercising due diligence and making reasonable inquiries and efforts to ascertain the existence of, obtain, and disclose material and information subject to discovery, the prosecution has disclosed and made available all known material and information it has obtained subject to discovery." The COC must also identify the items provided, along with items "that the prosecution is required to disclose and of which the prosecution is aware but has been unable to obtain despite the exercise of due diligence as evaluated under this section" (id.). If additional discovery is disclosed after a COC is filed, the prosecution must serve and file a supplemental certificate of compliance (SCOC) detailing "the basis for the delayed disclosure so that the court may determine whether the delayed disclosure impacts the propriety of the certificate of compliance" (CPL 245.50[1-a]). However, the filing of an SCOC shall not impact the validity of the original COC if filed "in good faith and after exercising due diligence", or if the additional discovery did not exist at the time of the original COC's filing (id.).
A. The Defense Motion Comports with CPL § 245.50(4).
The People argue that the defense's motion should be denied because the defense "failed to confer with the People in good faith to try to resolve all issues before resorting to motion practice" (P.'s Opp. at p. 12). Under CPL 245.50(4), the defense must "notify or alert" the prosecution of any defects or deficiencies relating to a COC, and any challenges relating to the sufficiency of a COC shall be addressed by motion within thirty-five days of the COC's service (CPL 245.50[4][a]-[c]).[FN2]
 Any motions to challenge a COC must also be accompanied by an affirmation that the movant timely made good faith efforts to confer about the missing items at issue, and that these efforts were unsuccessful (CPL 245.50[4][c]). Defense may request and the court may extend the 35-day window for filing a COC challenge for good cause shown (CPL 245.50[3][c][i]). The People argue that the instant motion should be denied because "defense counsel did not confer with the People in good faith to resolve the issues" (P.'s Opp. at p. 13).
Here, the People filed their COC on August 15, 2025. After reviewing discovery, on September 16, 2025, the defense sent a conferral email with a list of items she believed to be missing. The People responded that they were about to start trial on another case and needed time to address the defenses' concerns. As such, the defense reached out to this court to request an extension of the 35-day filing window for any potential COC challenge in order to adequately confer about discovery, which was granted. On September 26, 2025, the People responded to the defense's original conferral email, which confirmed that there was disagreement among the parties about what items constitute automatic discovery. On September 29, 2025, this court set the instant motion schedule with a defense filing deadline of October 3, 2025. On September 29, 2025, and October 1, 2025, the People served and filed additional outstanding discovery along with a supplemental COC (SCOC). Defense counsel filed the instant motion on October 3, 2025, as ordered by this court. As the defense points out, this date marked the 17th day after defense's original conferral email. 
This court disagrees with the People's assertion that the defense failed "to confer in good faith," considering the actions taken by defense counsel during this conferral process. The defense reached out to the People to confer about missing discovery within the statutory timeframe, and when the People indicated that they could not respond quickly due to being on trial, the defense reached out for a court extension. Absent a finding that the People "unreasonably delayed in responding to the defense's good faith effort to confer", any such extension is excluded from the speedy trial period (CPL 245.50[4][c][i]). The defense is not arguing that the People unreasonably delayed in responding to their inquiry and that this time should be charged. Additionally, the parties' papers clearly articulate disagreement on the discoverability of certain items, which could not be resolved without court intervention. Lastly, the instant motion was filed as per the motion schedule set by the court and only after the People filed additional discovery and a subsequent SCOC. Given the circumstances, this court finds that the defense did confer with the People in good faith to resolve the discovery issues and will not deny the instant motion on that basis. 
B. The People Met Their Burden to Establish That They Exercised Due Diligence.
The defense moves to invalidate the People's COC because several items were either belatedly disclosed or not disclosed at all prior to the People's COC. Specifically, the defense argues that the People belatedly disclosed the following items: the ZOLPA report; photos taken by arresting Officer Ho; a February 6, 2025, Intoxilyzer 9000 calibration report; .10% Simulator Solution Record (SSR) and gas chromatography for lot #24350 used in the February 6, 2025, calibration report; a PBT calibration report from August 21, 2025; an updated Department of Health (DOH) Breath Analysis Operator permit for Dmitriy Lyubchenko; and updated CCRB disclosures. Further, the defense maintains the following items, which they claim are automatically discoverable, remain outstanding: surveillance video; Officer Lyubchenko's relevant activity log; CCRB investigative recommendations for the Peoples' witnesses; the interrupted patrol log; the pre-arraignment notification report; the NYPD court verification card; and IAB Log Index sheets and log attachments for the Peoples' witnesses (the IAB Logs were disclosed). The People argue that any belated disclosures did not invalidate their initial COC, and that the outstanding items referenced by the defense either do not exist or are not automatically discoverable.
To assess the People's diligence with respect to automatically discoverable items either belated disclosed or not disclosed at all, this court must look at the totality of the People's efforts to comply with Article 245, rather than assess their efforts item by item (see CPL 245.50[5][a], see also CPL 30.30[5][b]). "Relevant factors for assessing the prosecutor's due diligence include, but are not limited to: the efforts made by the prosecutor to comply with the requirements of this article; the volume of discovery provided and the volume of discovery outstanding; the complexity of the case; whether the prosecutor knew that the belatedly disclosed or allegedly missing material existed; the explanation for any alleged discovery lapse; the prosecutor's response when apprised of any allegedly missing discovery; whether the belated discovery was substantively duplicative, insignificant, or easily remedied; whether the omission was corrected; whether the prosecution self-reported the error and took prompt remedial action without court intervention; and whether the prosecution's delayed disclosure of discovery was prejudicial to the defense or otherwise impeded the defense's ability to effectively investigate the case or prepare for trial" (CPL 245.50[5][a]; see also CPL 30.30[5][b]). "The court's determination shall be based on consideration of all factors listed in [CPL 245.50(5)(a)] and no one factor shall be determinative" (CPL 245.50[5][b]). "A court shall not invalidate a certificate of compliance where the party has exercised due diligence and acted in good faith in making reasonable inquiries and efforts to obtain and provide the material required to be disclosed" (CPL 245.50[6]).
1. Belatedly Disclosed Discovery
First, the People have confirmed that no surveillance video exists for this case. The People cannot disclose that which does not exist, and they are not required to seek out [*3]surveillance video in every case. 
Second, the People are correct that some of the belatedly disclosed or missing discovery referenced by defense counsel is not automatically discoverable. With respect to CCRB materials, CCRB is not a law enforcement agency, nor is it an agency within the People's control, and their records are equally available to both parties (see CPL 245.20[2]). Therefore, as this court has previously held, the People are only obligated to automatically disclose CCRB documents already in their possession (see People v Griffith, CR-021887-24NY [Crim Ct, NY County 2024]; see also People v Sanchez, 83 Misc 3d 671 [Crim Ct, NY County 2024]; People v Soto, 80 Misc 3d 473, 477 [Crim Ct, NY County 2023]). Here, the People turned over all CCRB records in their actual possession prior to filing their COC and also disclosed updated CCRB records when they received them in September. Therefore, the People were diligent in disclosing the CCRB materials in their actual possession, as required by Article 245. 
This court also does not find that the interrupted patrol log is subject to automatic discovery. According to the People, this log merely documents when a patrolling officer leaves and returns from the precinct. It remains unclear to this court whether this form is created for each individual case. The defense also makes no allegations that this document contains any case related information, such as the defendant's name, charges, or a summary of the allegations. Therefore, this form does not relate to the subject matter of this case and was not automatically discoverable. Even if it were, based on the factors outlined in CPL 245.50(5)(a), this court would find that this form's non-disclosure does not invalidate the People's COC. 
Similarly, this court has held that the pre-arraignment notification report is not subject to automatic discovery, because it is this court's understanding that it is created by the NYC Office of Technology and Innovation, a third-party agency, not NYPD, and is not in the People's actual or constructive possession (see People v Griffith, Docket No. CR-021887-24NY [Crim Ct, NY County 2024]). As such, this form's non-disclosure has no bearing on the validity of the People's COC. Even if it did, based on the factors outlined in CPL 245.50(5)(a), this court would not invalidate the People's COC for its non-disclosure.
When considering all of the factors outlined in CPL 245.50(5)(a), this court finds that the People met their burden to show that their initial COC was valid despite any belated and missing disclosures for this case. With respect to Offier Lyubchenko's finalized activity log, prior to filing their COC, the People properly requested and disclosed this officer's activity log from the date of the defendant's arrest. According to the People, Officer Lyubchenko had multiple shifts on the day of the defendant's arrest, and the command provided the People with an activity log starting at 6:00 PM, before the defendant was tested at the IDTU. Once alerted to this issue by the defense, the People requested the additional activity log on September 29, 2025, and received and disclosed it on October 15, 2025. Considering the factors in CPL 245.50(5)(a), this inadvertent non-disclosure does not invalidate the People's COC. Even a diligent prosecutor may not have noticed the time difference in the activity log when collecting and disclosing this item. Here, the People attempted to disclose the officer's proper activity log prior to filing their COC and did in fact disclose an activity log for this officer from the defendant's date of arrest. This People took prompt action once notified of this error and corrected this error without court intervention. Further, it does not appear that this inadvertent non-disclosure was prejudicial to the defense or otherwise impeded the defense's ability to effectively investigate the case or prepare for trial. 
With respect to the belated disclosure of the remaining items, this court finds that the People met their burden to show they exercised due diligence to fulfill their obligations under Article 245. In their opposition, the People outlined in detail the steps they took to fulfill their discovery obligations, and the People provided the court with several email correspondences that documented their discovery collection process for this case. The defendant was arraigned on this case on June 16, 2025. On June 27, 2025, the assigned assistant began investigating the case and requested all documentation relating to the Intoxilyzer, including calibration reports, gas chromatography, and solution simulator reports (P.'s Opp. at p. 4). The People also requested the [*4]PBT calibration report and DOH permit for Officer Dmitriy Lyubchenko.[FN3]
Also on June 27, the People emailed the arresting officer, Officer Ho, to request any photographs that he took for this case (id.). On July 16, 2025, the assigned assistant reviewed all of the discovery in the People's actual possession, and after reviewing, sent a request for items not in their actual possession to the District Attorney's Office Litigation Support Unit (LSU). These items included finalized end of tour activity logs for the officers involved in the arrest, chain of custody reports for property related to the arrest, the arrest report worksheet, and the complaint report worksheet (id.). Also on July 16, the assigned assistant requested all police radio runs and the IDTU video from NYPD Highway Unit 1 (id.). On July 16, 2025, 30 days from arraignment, the assigned assistant disclosed to the defense all of the discovery they had in their actual possession. This included all the NYPD paperwork shared with the People after the defendant's arrest, the calibration report for Intoxilyzer 90-002040 and the related paperwork, law enforcement disclosures, and body-worn camera footage (id. at p. 5). On July 24, 2025, the assigned ADA reached out to LSU again for all forms related to the search of the defendant's vehicle, including the vehicle seizure form, the vehicle report, and the property clerk vehicle inspection report generated from the invoicing inspection (id.). Notably, as the People received additional discovery, the assigned ADA continued to disclose it to defense counsel, rather than holding onto it until filing their COC. The People shared discovery either when it was received or shortly thereafter, on July 16, July 24, July 31, August 5, and August 15, 2025, thus further evincing diligence in fulfilling their discovery obligations (id.). 
As for the other factors, the volume of the discovery provided significantly outweighs the volume of discovery outstanding or belatedly disclosed. While not a complex case, the items belatedly disclosed were not significant, were often duplicative of other discovery, and their delayed disclosure did not impede the defense's ability to prepare for trial. Notably, several of these belatedly disclosed items — all except for the ZOLPA form [FN4]
— were actually requested by the assigned assistant well before filing their COC, and their belated disclosure was due to external parties, as opposed to the lack of diligence of the assigned assistant on this case. The People's email correspondences evince that they continually reviewed the discovery they had in their actual possession to determine what, if anything, remained outstanding, and then followed up when they believed particular items were missing. For the most part, once apprised of missing discovery by the defense, the People took prompt action to remedy their mistakes without court intervention.
As such, this court finds that the People exercised due diligence and acted in good faith in making reasonable inquiries and efforts to obtain and provide automatically discoverable materials despite these belated disclosures.
2. Outstanding Discovery
The only automatically discoverable items that appear to be outstanding are the NYPD [*5]court verification card and IAB log attachments and index sheets for the People's testifying witnesses.[FN5]
The People argue that these documents are not automatically discoverable, and this court disagrees. With respect to the NYPD court verification card,[FN6]
this court has found that this document is automatically discoverable (see People v Aiken, Docket No. CR-023779-24NY [Crim Ct, NY County 2024]). A brief review of the court file indicates that an arraignment card exists for this case. The arraignment card, which bears an NYPD logo, states the circumstances of the arrest, as well as information about the defendant, the complaining witness, and the arresting officer. There is also a narrative portion on this form where the instant incident is summarized. As an NYPD generated document created for this case, this form is automatically discoverable (see CPL 245.20[2] [all items or information related to the case in the possession of law enforcement is deemed to be in the People's possession]; CPL 245.20[1][e] [summarized statement made by persons who have evidence relevant to the charges]; see also People v J.M.W., 83 Misc 3d 1289[A], *7 [Sup Ct, Kings County 2024] [finding the NYPD Court Verification Arraignment Card automatically discoverable]; People v Meeks, Ind. No. 71477-24 [Sup Ct, Kings County 2025] [same]; People v Dieudonne, 213 NYS3d 707, 707 [Crim Ct, Kings County 2024] [ordering the People to disclose the arraignment card]).
Additionally, this court has routinely held that IAB log attachments for substantiated and unsubstantiated claims of misconduct are automatically discoverable as impeachment material for testifying witnesses, regardless of whether the People feel they are related to the subject matter of the instant case (see, e.g., People v Aron, 85 Misc 3d 1231[A] [Crim Ct, NY County 2025] [People's COC was invalid for their failure to exercise due diligence and make reasonable inquiries with respect to officers' disciplinary records]). This conclusion is based on the plain language of CPL 245(1)(k) along with binding and persuasive appellate precedent on this issue (see CPL 245.20[1][k] [the People must disclose impeachment material for testifying witnesses "irrespective of whether the prosecutor credits the information"]; People v Rodriguez, 77 Misc 3d 23, 25 [App Term, 1st Dept 2022] [Appellate Term invalidated COC where the People failed to turn over underlying impeachment materials without addressing whether said records related to the subject matter], citing Matter of Jayson C., 200 AD3d 447 [1st Dept 2021] [court held that a defendant in a criminal proceeding would be entitled to access to the underlying impeachment records without analyzing whether the records related to the subject matter of the instant case]; People v Coley, 240 AD3d 122 [2d Dept 2025] [the People's automatic discovery obligation under CPL 245.20(1)(k)(iv) is not subject to "an additional layer of analysis" of whether the material is "related to the subject matter of the case"]; People v Luna, 83 Misc 3d 62 [App Term, 2nd Dept, 9th and 10th Jud Dist 2024] [conviction reversed, COC deemed invalid, and case dismissed where the People failed to disclose underlying IAB records for an officer involved in the case]). 
The People's reliance on People v Johnson, 218 AD3d 1347 (4th Dept 2023), is unreasonable given the fact that the majority of judges presiding in New York County Criminal Court have held that IAB attachments for substantiated and unsubstantiated disciplinary claims of police officers are automatically discoverable under First Department precedent, despite contrary holdings in the Third and Fourth Departments, such as Johnson.[FN7]
To the extent that the [*6]People disagree with the overwhelming majority of judges in the NY County Criminal Court, they can seek a protective order. They cannot, however, unilaterally withhold these documents unless and until the defense convinces them that they relate to the subject matter of the case and should be disclosed. 
Although the NYPD court verification card and IAB logs index sheets and attachments are automatically discoverable, given the factors in CPL 245.50 and the People's overall efforts to comply with Article 245 as outlined above, the fact that these items remain undisclosed does not invalidate the People's COC or subsequent SCOCs for this case. The information found in the court verification card is mostly, if not completely, duplicitous information that can be found elsewhere in the discovery turned over. This form's non-disclosure pales in comparison to the volume of discovery shared, and it cannot be said that its non-disclosure impeded the defense's ability to prepare for trial. With respect to the missing IAB disclosures, here, the People indicate that prior to filing their COC for this case, they contacted the Law Enforcement Disclosure Group ("LED"), who collected all IAB logs and other law enforcement impeachment material for the NYPD officers who could potentially testify in this case. In addition to contacting LED, the People ran a separate "Garrett search" for the testifying officers and provided this information to defense counsel. These actions were taken early on in the case, and well before the People filed their initial COC. 
The defense is in possession of the IAB Logs for the testifying witnesses in this case, but not the IAB index sheets or the logs' underlying attachments. This court remains unclear whether the People have actual possession of the materials requested by defense counsel. The Brady/Giglio portion of the People's Automatic Disclosure Form (ADF) indicates that they have a request pending with the NYPD for "responsive material." This same portion indicates: "[w]here such information has been obtained, it is included above. However, some aspects of this search may be ongoing due to the significant volume of requests received by the NYPD. As any discoverable material becomes available, the People will produce it as soon as practicable." Therefore, it is unclear whether the People are simply unilaterally withholding IAB material from defense counsel or whether the People have yet to receive complete IAB records from NYPD and are just claiming their disclosure is unnecessary. Obviously, the former would result in a less favorable diligence analysis given the factors outlined in CPL 245.50(5)(a). However, here, given the People's overall efforts to fulfill their discovery obligations, this court finds that the non-disclosure of the IAB Index Sheets and underlying log attachments does not render their initial COC invalid. 
Regardless of the People's actual or constructive possession of the undisclosed IAB materials, this court is concerned with the People's continued insistence that IAB logs and their underlying attachments for substantiated and unsubstantiated complaints against their testifying officers are not automatically discoverable. As this court and many others within this very courthouse have continually stated, to the extent that the People believe these records are not discoverable, they should seek a protective order to obtain a court ruling on these documents' discoverability. The People should not simply withhold or unilaterally redact IAB materials and claim they are not related to the subject matter of the case. If materials have been requested from NYPD, but have yet to be received, the People would also be wise to specify this information in their ADF so courts can properly analyze their diligence in disclosing these materials. This court's ruling should not be construed to mean that a COC is always valid even when the People fail to disclose IAB Logs and their attachments for testifying witnesses. The new amendments to [*7]Article 245 in no way allow the People to determine what is relevant or may be significant when it comes to disciplinary records, nor are the People now considered the gatekeepers of this evidence. This court's ruling is simply that in this case the People have established that they exercised due diligence in complying with Article 245 despite these items' non-disclosure. Had the People not outlined in detail the steps they took to ensure discovery compliance well before their initial COC filing as well as far before the expiration of their speedy trial period, this court's assessment of the People's due diligence would have been different.
In sum, this court finds that the People have met their burden of demonstrating that they exercised due diligence and made reasonable inquiries prior to filing the initial COC despite the few belated and missing disclosures (Bay, 41 NY3d at 213, citing People v Santos, 68 NY2d 859, 861 [1986]). As such, the defense's motion to invalidate the People's COC is DENIED. However, the People are ORDERED to turn over IAB log attachments and index sheets for substantiated and unsubstantiated claims for all testifying officers. The People are further ORDERED to obtain and disclose the NYPD court verification card for this case.[FN8]
 Such disclosures should be made within 10 days from the date of this order. 

II. FACIAL SUFFICIENCY
The defense argues that the accusatory instrument is facially insufficient because it contains unconverted hearsay. Specifically, the defense references a sworn statement by Officer Ho in the accusatory instrument, "I am informed by Police Officer Dmitriy Lyubchenko (Shield # 11879 of Highway Unit 1) that he administered a test pursuant to provisions of Section 1194 of the Vehicle and Traffic Law to determine the defendant's blood alcohol content and the test indicated that the defendant had a blood alcohol content of .09 of one per centum by weight of alcohol in his blood." At the defendant's arraignment, the People served and filed IDTU paperwork from Officer Lyubchenko, which is signed and confirms the defendant's alcohol content alleged in the accusatory instrument. However, the defense argues that the IDTU paperwork does not resolve the hearsay implicit in Officer Ho's statement that Officer Lyubchenko administered the test pursuant to the provisions of Section 1194 of the Vehicle and Traffic Law. The defense argues that this renders the accusatory instrument facially insufficient. 
The Court of Appeals has held that hearsay pleading defects in the factual portion of an accusatory instrument can be waived if not timely raised (People v Casey, 95 NY2d 354, 367 [2000]). Here, the defendant was arraigned on this accusatory instrument on June 17, 2025. The defense did not raise any objection to this accusatory instrument until they filed the instant motion on September 25, 2025, well beyond 45 days from the defendant's arraignment on this instrument, which had been deemed an information (see CPL §§ 255.20[1]; 255.20[3]). Therefore, the defendant's motion is denied as untimely. However, even if timely, this court would find that the factual allegations here are facially sufficient and give the defendant "sufficient notice to prepare a defense and are adequately detailed to prevent a defendant from being tried twice for the same offense" (Casey, 95 NY2d at 360; see People v Argon, 28 NY3d 125, 128 [2016]; People v Konieczny, 2 NY3d 569, 576 [2004]; People v Smalls, 26 NY3d 1064 [2015]).
Therefore, the defense's motion to dismiss for facial sufficiency is DENIED.

III. SPEEDY TRIAL
Pursuant to CPL 30.30[1][b], when a defendant is charged with a misdemeanor punishable by a sentence of more than three months, the prosecution must be ready within 90 days from the commencement of that criminal action. To satisfy the initial burden under CPL 30.30, the defendant need allege "only that the prosecution failed to declare readiness within the [*8]statutorily prescribed time period" (People v Luperon, 85 NY2d 71, 77-78 (1995); see also People v Goode, 87 NY2d 1045, 1047 [1996]). Once the defendant has alleged that more than the statutorily prescribed time period has elapsed since the commencement of the action, the prosecution bears the burden of establishing sufficient excludable delay (see People v Berkowitz, 50 NY2d 333, 349 [1980]). "[A]bsent an individualized finding of special circumstances", prosecutors cannot be deemed "ready for trial" pursuant to CPL 30.30 until they have filed a valid COC (CPL 245.50[3], see also People v Bay, 41 NY3d 200, [2023]).
Here, as the defendant is charged with an unclassified misdemeanor punishable by a sentence of more than three months, the applicable time period is 90 days. This case was filed, and the defendant was arraigned June 16, 2025. The defendant was released, and the case was adjourned to July 21, 2025, for trial. This time period is chargeable, because the People did not file a COC or COR during this time period. (35 days charged)
On July 21, 2025, the People were not ready, and the case was adjourned to September 29, 2025, for trial. On August 15, 2025, off-calendar, the People served and filed a COC and COR. As stated above, the People's COC and accompanying statement of readiness were valid and effective in stopping the speedy trial period. Therefore, the People are only charged from July 21, 2025, to August 15, 2025. (25 days charged; 60 days charged)
On September 29, 2025, the instant motion schedule was set, and the case was adjourned to November 19, 2025, for a decision. This time is excludable for motion practice. (0 days charged)
As only 60 chargeable days have accrued for this case, the defense's motion to dismiss is DENIED.

IV. SUPPRESSION
The defendant's motion for the suppression of tangible, non-tangible and testimonial evidence, is granted to the extent that Mapp/Dunaway/Ingle hearings will be conducted. Gursey and VTL 1194 hearings are also ordered (see People v Mendoza, 82 NY2d 415, 429-30 [1993] ["considerations of judicial economy militate in favor" of granting hearings rather than summarily denying for perceived pleading deficiencies when "the hearing is grounded in the same facts involving the same police witnesses" as other hearings granted by the court]; People v Otero, 51 AD3d 553, 554 [1st Dept 2008] ["the interest of judicial economy militates in favor of the court's conducting a hearing on the entire suppression motion in the exercise of its discretion despite a perceived pleading deficiency"]). 
The defendant's motion for the suppression of statements, allegedly attributed to him, is granted to the extent that Huntley/Dunaway hearings will be conducted. A voluntariness hearing is also ordered. 

 V. PRECLUSION
The defendant's motion for the preclusion of unnoticed statements and identification testimony is denied, with leave to renew, should the People seek to introduce such evidence.

VI. SANDOVAL
The defendant's motion pursuant to People v Sandoval, 34 NY2d 371 [1974] and People v Ventimiglia, 52 NY2d 350 [1981] is referred to the trial court for determination.

VII. BRADY/ROSARIO
The People are reminded of their continuing obligation pursuant to Brady v Maryland, 373 US 83 (1963) and its progeny. The People are reminded of their continuing obligation to supply all Brady and Rosario material as well as their supplemental discovery obligations under CPL Article 245, to be served on defense no later than 15 days prior to the first scheduled trial date. 

VIII. ADDITIONAL MOTIONS
Any additional, supplemental, or amended motions contemplated by the defendant shall be permitted only to the extent that such new or amended motions fall within the scope of CPL 255.20(2) and (3).
This constitutes the Decision and Order of this Court.
Dated: November 19, 2025
HON. MARVA C. BROWN, JCC

Footnotes

Footnote 1: "When the discoverable materials, including video footage from body-worn cameras, surveillance cameras, or dashboard cameras, are exceptionally voluminous or, despite diligent, good faith efforts, are otherwise not in the actual possession of the prosecution," the time period may be stayed an additional thirty calendar days without permission from the court (CPL 245.10[1][a]).

Footnote 2: After the expiration of 35 days, the defense is permitted to file a COC challenge "where the grounds for such challenge are based upon a material change in circumstances, including but not limited to the belated disclosure of discoverable material pursuant to [CPL 245.20], or, where the party entitled to disclosure could not, with due diligence, have known of the specific and particularized matters forming the basis of the challenge prior to the expiration of such period" (CPL 245.50[4][c][ii]).

Footnote 3: The People disclosed this permit prior to filing their COC. However, as the People explain, "The People inadvertently provided defense counsel with Officer Lyubchenko's previous department of health permit which had expired. Once alerted by defense counsel that the permit was expired, the People obtained the non-expired permit." However, considering the factors in CPL 245.50(5)(a), this court finds that the People exercised due diligence and acted in good faith to make reasonable inquiries and efforts to obtain and provide the officer's proper DOH permit.

Footnote 4: The ZOLPA form documents the names of the officers that participated in the defendant's arrest processing, contains notes entered by these officers about the defendant, and documents information such as how long the defendant was in custody and where he was lodged prior to arraignment. Although automatically discoverable, given the administrative nature of this form, it cannot be said that the delayed disclosure of this form impeded the defense's ability to prepare for trial on this case. 

Footnote 5: As discussed above, this court disagrees that the interrupted patrol log and the pre-arraignment notification report are automatically discoverable.

Footnote 6: This form is also often referred to as the arraignment card.

Footnote 7: See People v Cifuentes, Docket No CR-003574-24NY (Crim Ct, NY County 2025) (Tatham, J.); People v Deida, Docket No CR-030660-23NY (Crim Ct, NY County 2024) (Brown, J.); People v Lewis, Docket No CR-015449-24NY (Crim Ct, NY County 2024) (Haniff, J.); People v Walker, Docket No CR-003525-24NY (Crim Ct, NY County 2024) (Rosenthal, J.); People v Scott, Docket No CR-026941-23NY (Crim Ct, NY County 2024) (Pauley, J.) (the People's "sincere belief" that IAB materials are not discoverable does not excuse non-disclosure); People v Mejia-Diaz, Docket No. CR-001852-24NY (Crim Ct, NY County 2024) (Weiner, J.); People v Hernandez, CR-025819-23NY (Crim Ct, NY County 2024)(Lewis, J.); People v Sanchez, 83 Misc 3d 671 (Crim Ct, NY County 2024) (McDonnell, J.).

Footnote 8: Nothing in this decision precludes the defense from arguing in limine for sanctions pursuant to CPL 245.80 for any missing or belated disclosures discussed in this decision. However, any decisions concerning sanctions for missing or belated disclosures are left to the trial court.